## LESLIE v. STATE.

Forgery—Information, Sufficiency of—Instructions—Evidence.

1. In a criminal case the Supreme Court is authorized to review only errors of law appearing of record, and a reversal will follow only when such errors, if any, affect the substantial rights of the accused.

2. A false writing certifying that a party is the authorized representative of a certain newspaper, and has authority to make collections, receive payment for subscriptions and advertisements, purporting to be signed by the business manager of the newspaper, is, within the statute, making it forgery to falsely

make, or publish or utter as true and genuine, "any letter of attorney or other power to receive money."

3. An information charging that the defendant, "having in his hands and possession then and there a writing on paper of the tenor following," setting out in full the writing which purported to authorize the defendant to receive payment for subscriptions and advertisements due a certain newspaper and to be signed by the business manager thereof, and then charging that said writing was and is false, forged and counterfeited, and that, knowing the same to be false, forged and counterfeited, the defendant did unlawfully and feloniously publish and pass the same to one S. as true and genuine, with the intent to prejudice and defraud said S., charges a violation of law, and is sufficient as against a motion in arrest of judgment.

4. The alleged forged instrument purporting to be the act of the "Rocky Mountain News," a newspaper published in Denver, Colorado, it was not material, nor necessary to be averred or proved whether the business concern known as the "Rocky Mountain News" was owned or conducted by an individual, a partnership, or corporation, or an unincorporated company.

5. The statute defining the crime of forgery does not require that by the information or indictment it shall appear that the alleged forged writing is that of either a person or corporation.

6. Since the statute provides that in case the defendant in a criminal case neglects or refuses to be sworn and examined as a witness, or to make a statement without being sworn, no reference shall be made to, nor shall any comment be made upon, such neglect or refusal, it is not error to refuse to give an instruction at request of defendant that "the defendant is not required to testify, and the jury have no right to presume anything against him because he has failed to testify;" there being no claim that anything occurred during the trial to call for the instruction beyond the mere failure of the defendant to testify.

7. Where a witness for the prosecution was erroniously permitted over objection to state that he had received a telegram from the newspaper stating that the defendant was not authorized to act as their agent, the error was not prejudicial, in view of the fact that the business manager of the paper testified as a witness to the same fact.

[Decided July 26, 1901. On Petition for Rehearing, May 28, 1902.]

ERROR to the District Court, Sweetwater County, HON. DAVID H. CRAIG, Judge.

J. H. Leslie was convicted of forgery, and sentenced to three years in the penitentiary. A motion in arrest of judgment was overruled and the defendant prosecuted error. The facts are fully stated in the opinions.

*E. E. Enterline,* for plaintiff in error.

The facts stated in the information do not constitute an offence punishable by the laws of Wyoming. The instrument could not be considered the instrument of or one executed by the Rocky Mountain News. It did not have the capacity to injure or defraud. Where an instrument does not show on its face that one can be defrauded thereby extrinsic facts must be averred to show fraudulent tendency. (R. S., 5128, 5135; State v. Wheeler, 19 Minn., 98; People v. Smith, 112 Mich., 192; 8 Ency. Law (1st Ed.), 494, 497, 523, and cases cited; 9 Ency. Pl. & Pr., 550, 559-567, and cases cited; Reed v. State, 28 Ind., 396; State v. Evans, 15 Mont., 539; Crawford v. State (Tex.), 50 S. W., 378; People v. Terrill (Cal.), 59 Pac., 836; Com. v. Hinds, 101 Mass., 209; Hutton v. State (Tex.), 38 S. W., 209.) Guilty knowledge must exist at time of publishing a forged instrument. (3 Greenleaf Ev., Sec. 111.) The same must be uttered as true and genuine. (R. S., 5128.) It was error to refuse the instruction requested that the jury should presume nothing against the defendant from his neglect to testify. (State v. Evans (Kan.), 58 Pac., 240; State v. Magers, (Or.), 58 Pac., 892; State v. Carnagy (Ia.), 76 N. W., 805.)

On petition for rehearing: It is necessary that the information state or show that the instrument was either the instrument of a person or corporation. (8 Ency. Law (1st Ed.), 457, 458, 460.) There was no allegation as to where the newspaper was published, or that Campbell was the business manager; and, if those facts are material, they should have been pleaded. The great weight of authority supports the contention that the instruction requested as to the failure of the defendant to testify should have been

given. (Wharton's Crim. Ev., Sec. 435; State v. Weems
(Ia.), 65 N. W., 394; Fulcher v. State (Tex.), 13 S. W.,
750; Metz v. State, 46 Neb., 547; State v. Cameron, 40
Vt., 556; Linbeck v. State (Wash.), 25 Pac., 452; Farrell
v. People, 133 Ill., 244; State v. Landry, 85 Me., 95; Mat-
thews v. People, 6 Colo. App., 456; People v. Flynn, 73
Cal., 513; Foxwell v. State, 63 Ind., 539; Thrawley v. State,
153 Ind., 375; Guinn v. State, 39 Tex. Cr., 257; Haynes v.
State (Miss.), 27 So., 601; State v. Johnson, 50 La. Ann.,
154; People v. Fitzgerald, 46 N. Y. S., 1020; Unsell v.
State (Tex.), 45 S. W., 902; State v. Carnagy (Ia.), 76
N. W., 805; State v. Stevens (Ia.), 25 N. W., 777; State v.
Magers, 58 Pac., 892; Grubb v. State (Ind.), 20 N. E.,
257; Ferguson v. State (Neb.), 72 N. W., 590; State v.
Evans, 58 Pac., 240; State v. Goff (Kan.); 61 Pac., 683.)
Only two cases support the holding of the court in the
original opinion, viz: State v. Robinson, 117 Mo., 663, and
State v. Pearce, 56 Minn., 226.

*J. A. VanOrsdel,* Attorney General, and *Taliaferro &
Watts,* for the State.

The instrument speaks for itself, and no extrinsic facts
were necessary to be shown to determine its nature and
character. It is a power to receive money under the statute.
(R. S., 5128.) It was not necessary for the State to allege
or prove that the Rocky Mountain News was an existing
corporation, or whether C. R. Campbell was a real or ficti-
tious person, since it was proven that the instrument was
false and so known to defendant when he uttered it as true
and genuine. (2 Bishop's New Cr. Pro., Sec. 454; 9 Ency.
Pl. & Pr., 589; Jackson v. Com. (Ky.), 34 S. W., 14; San-
tolini v. State, 6 Wyo., 110.) It was not error to refuse
the instruction based on the defendant's failure to testify.
Our statute is to be distinguished from most others, in that
it provides that no reference shall be made to such failure.
(Sec. 5346; State v. Pearce, 56 Minn., 226; State v. Rob-
inson, 117 Mo., 663.) It is sufficient that the instrument

charged to have been forged appears to be good and effectual if valid, though the circumstances which would render it effectual do not appear. The instrument was clearly the subject of forgery. (Allgood v. State, 87 Ga., 668; Wilcoxson v. State, 60 Ga., 184; Henderson v. State, 14 Tex., 503; Smith v. State, 29 Fla., 408; People v. Bibly, 91 Cal., 470; Kennedy v. State, 33 Tex., 183; State v. Bauman, 52 Ia., 68; Hendricks v. State, 26 Tex. App., 179; Dovaline v. State, 14 id., 324.) It is utterly immaterial whose name was signed as business manager, or whether the name as signed varied from the true name of the business manager of the newspaper in question. The existence of the person whose name is forged is immaterial. (U. S. v. Turnet, 7 Pet., 132; U. S. v. Brewster, id., 164; State v. Price, 8 Ia., 231; Com. v. Russell, 156 Mass., 196; State v. Flye, 26 Me., 312; Snow v. State, 14 Wis., 479.)

KNIGHT, JUSTICE.

Appellant was convicted of forgery and given three years in the penitentiary under a statutory provision of Wyoming particularly intended, it would seem, to cover a multitude of sins, which is as follows:

"Sec. 5128. Every person who shall falsely make, alter, forge or counterfeit any record or other authentic matter of a public nature, or any charter, letters-patent, deed, lease, indenture, writing obligatory, will, testament, codicil, annuity, bond, covenant, United States treasury note or United States bond, bank bill or note, post note, check or draft, bill of exchange, contract, promissory note, due bill for the payment of money or property, receipt for property or money, power of attorney, any auditor's warrant for the payment of money at the treasury, county order or any accountable receipt, or any order or warrant or request for the payment of money or the delivery of goods or chattels of any kind, or for the delivery of any instrument of writing or acquittance, release or receipt for money or goods, or any acquittance, release or discharge for any debt, account, action, suit,

demand, or other thing, real or personal, or any transfer or assurance of money, moneys, stock, goods, chattels or other property whatever, or any letter of attorney or other power' to receive money, or to receive or transfer stock or annuities, or to let, lease, dispose of, alien or convey any goods or chattels, lands or tenements or other estate, real or personal, or any acceptance or indorsement of any bill of exchange, promissory note, draft or order, or assignment of any bond, writing obligatory, promissory note for money or other property, or shall counterfeit or forge the seal or handwriting of another, with intent to damage or defraud any person or persons, body politic or corporate, whether the said person or persons, body politic or corporate reside in or belong to this State or not; or shall utter, publish, pass or attempt to pass as true and genuine, or cause to be uttered, published, passed, or attempted to be passed, as true and genuine, any of the above named false, altered, forged or counterfeited matters as above specified and described (knowing the same to be false, altered, forged or counterfeited), with intent to prejudice, damage or defraud any person or persons, body politic or corporate, whether the said person or persons, body politic or corporate, reside in this State or not, shall be deemed guilty of forgery, and upon conviction thereof shall be punished by confinement in the penitentiary for a term not more than fourteen years."

The evidence in this case shows that the plaintiff in error on March 31st, 1900, appeared at the place of business of one Charles Swanson in the city of Rock Springs, Sweetwater county, Wyoming, and continues as follows:

"I was home to dinner when I come back from dinner this gentleman over there come in and asked me if I was Mr. Swanson I says 'yes,' and he told me that he was writing up the town and taking up subscriptions for the Denver News and he didn't have the list of subscribers; he said he left them up in the hotel, but he showed me a couple of them, blue receipts, and he said also that the price is a little cheaper now, he said reduced rates. So I told him I got the

paper. I was paid up a short time ago, but he told me if I renew the subscription it would be a little cheaper. And he told me that he had changed territory with Caldwell. Caldwell is the man that travels through Wyoming and collects for the Denver News, and he told me he got Nebraska, and Leslie told me he got Wyoming, and he told me that Mr. Campbell, the business manager of the News, was an uncle of his. He shows me a paper that he was authorized to collect for the Denver News. So I told him to come around a little later, I was short of small change. I telegraphed to the Denver News to find out if he was authorized to collect. I got an answer, 'We have no such agent in Wyoming; Mr. Leslie is a fraud.'"

Then follows evidence of the arrest, and he continues: "We went up to the city hall. Mr. Morton (the officer who had made the arrest) asked him by what authority he go around and collect for the Denver News, so he pulls out the same paper he showed me and shows Morton, with the business manager's signature in Denver." Witness identified paper (Ex. "A").

A. G. Morton testified that he was a deputy sheriff, and gave the following evidence: "Went up to the room, knocked at the door. Told him who I was, that I had a warrant for him and asked him to come outside. He said he would as soon as he was dressed. It was just about the head of the stairs. I sat down on the stairway to wait for him. I looked up in a couple of minutes. I sat there about that long. I see a gentleman standing at the head of the stairs. I asked him if he was Mr. Leslie; he said 'No.' He asked me if I wished to see him. I said 'yes.' He said he would call him. He went in I heard a window go open I went to the door and told him to come out, he came out. I took him over to the city hall. I asked him what authority he had to represent the Rocky Mountain News. He showed me the letter of authority there (Ex. "A"). He took that paper out of his pocket handed it to me says 'That is my authority' I asked him who gave him that authority. He says 'Mr. Campbell gave it to me.'"

Q.  Did he say what business Mr. Campbell's was.

A.  I asked him he says he was business manager of the Rocky Mountain News.

R. C. Campbell testified as follows: That he was business manager of the Rocky Mountain News at the time and also on March 31st, 1900; that he had never seen J. H. Leslie (dft. below) before that he was aware of; that the Rocky Mountain News was published in Denver. He was shown the letter identified by former witnesses (Exhibit A), testified that the signature was not his; that he never gave the letter to J. H. Leslie; that he did not know whose signature it was; that the instrument was not true and genuine, and that defendant was no relation of his that he was aware of.

During the examination of this witness and at about this point the following incident occurred upon which error is claimed:

Q.  "Did you as business manager of the Rocky Mountain News ever authorize the defendant, J. H. Leslie, to make collections, receive payment or receive subscriptions or advertisements for the paper?"

A.  "No, sir."

"Objected to by counsel on behalf of the defendant as being incompetent, irrevelant and immaterial. No allegation in this indictment that he is business manager of the Rocky Mountain News. Objection overruled. Defendant by counsel excepts. By the court: It is a matter for the jury to pass on as to his representing having authority from the business manager as to whether it is forgery or not. Defendant by counsel excepts to the statement of the court made in the presence of the jury."

Exhibit A reads as follows: "Established 1859. The Leading Paper of the West, Rocky Mountain News, Denver, Colorado. Daily and Weekly, also Sunday. By Mail, Daily, $7.50; Weekly, $1.00 per Year.

"Denver, Colorado, March 1st, 1900.

"This is to certify that this Mr. J. H. Leslie of New Orleans, La., is our authorized representative of the Rocky

Mountain News, has full authority to make collections, receive payment for subscriptions and advertisements.

"C. R. CAMPBELL, Business Manager."

The defense offered no evidence. During the giving of the evidence for the prosecution numerous objections were made to the testimony, and the record shows that the trial court was more than generous to the defendant, as, for instance, witness Swanson was asked:

Q. "Did he represent that he was the agent of the Rocky Mountain News?"

A. "Yes."

Objection was made as being incompetent, irrelevant and immaterial. The court struck it out as leading.

The foregoing recital serves to show that the facts in evidence conduced to establish the guilt of the accused, and further than this we are not authorized to examine the testimony, being confined exclusively under the express language of the law to a review of errors of law appearing of record, and then only when they are such as to affect the substantial rights of the accused.

By a motion in arrest of judgment the appellant first raises the sufficiency of the information. This instrument is as follows:

"Comes now John H. Chiles, County and Prosecuting Attorney of the County of Sweetwater, in the State of Wyoming, and in the name and by the authority of the State of Wyoming, informs the court and gives the court to understand that J. H. Leslie, late of the county aforesaid, on the 31st day of March, A. D. 1900, at and in the county aforesaid, having in his hands and possession then and there a writing on paper of the tenor following: Established 1859. Rocky Mountain News, the Leading Paper of the West, Daily and Weekly, also Sunday, Denver, Colorado. By Mail, Daily, $7.50; Weekly, $1.00 per Year. Denver, Colorado, March 1st, 1900. This is to certify that this Mr. J. H. Leslie of New Orleans, La., is our authorized representative of the Rocky Mountain News, has full authority

to make collections, receive payment for subscriptions and advertisements.—C. R. Campbell, Business Manager.

"Which said writing on paper was and is false, forged and counterfeited, did then and there, well knowing the same to be false, forged and counterfeited unlawfully, and feloniously utter, publish and pass the same to Charles Swanson as true and genuine, with the intent to prejudice and defraud the said Charles Swanson, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of Wyoming."

In order that we may keep in mind the office of a motion in arrest of judgment, we quote from Sec. 845, Abbott's Criminal Trial Brief:

. "A motion to arrest judgment must be founded on some fundamental defect in the indictment." (Citing a number of authorities.) "The defect must appear from the record itself. Evidence extrinsic to the record cannot be received, even though such evidence was given on the trial." (Authorities cited.)

It is urged that it was contended by the prosecution in the District Court that the instrument set forth in the informaion was a letter of attorney or other power to receive money, and that such contention is illogical. That it does not authorize the defendant to receive any particular sum of money from Mr. Swanson, nor does it show for whom any collections are to be made. That it could not be considered the instrument of, or one executed by the Rocky Mountain News. Nor does it appear whose instrument it is. That the instrument did not have the capacity to injure or defraud, and it is not the subject of forgery. And if an instrument does not show on its face that any one can be defrauded, extrinsic facts must be averred to show its fraudulent tendency.

That if it be urged that the instrument set forth in the information purports to be executed by the Rocky Mountain News, then it does not appear that the Rocky Mountain News is a corporation. Nor does it show that said instru-

ment was executed by an agent or officer of any corporation; that the information can only be sustained by indulging in the most violent presumption.

Upon this contention a case in point is that of Harding v. the State, 54 Ind., 359, from which we quote: "The first and, indeed, the only serious objection urged by appellant's counsel to the second court of the indictment is that the instrument of writing, called a promissory note, and set out in the indictment, is not a promissory note, within the meaning of the law on which an indictment for the forgery of a promissory note could be predicated. * * * In our opinion, in the case at bar, the instrument of writing for the alleged forgery of which the appellant was indicted was correctly described in the second court of the indictment as a promissory note.

"But if we were in error, holding as we do that the instrument of writing set out in the indictment was properly described therein as a promissory note, a contrary decision would be of no benefit to the appellant. The argument of appellant's counsel is this: It appears upon the face of the indictment that the instrument forged was not a promissory note, and, therefore, his conclusion is, the indictment was insufficient and ought to have been quashed. But from our standpoint, the argument is unsound and illogical. In our view of the case, appellant was indicted for forging a certain instrument, we look to the copy of the instrument and not to the name which may be given to the instrument to determine whether or not the instrument appears on its face to be of such a character that a forgery could be predicated thereon." This authority is in point only as to the contention of counsel, as the instrument set out in the information is not designated therein as a letter of attorney or other power to receive money. The information in this case charges directly and certainly that Leslie did publish, utter and pass as true and genuine, a false, forged and counterfeit writing on paper, knowing the same to be false, forged and counterfeited, with intent to prejudice and defraud one

Charles Swanson. Under the provisions of Sec. 5128 supra, the information charges a violation of law, and the uncontradicted evidence above set out sustains the charge.

Our former Chief Justice Groesbeck in Santolini v. State, 6 Wyo., 110, has so thoroughly discussed this Section 5128 (then Sec. 924), and the cases being so similar, several authorities presented being the same, that we will not leave any proposition made that was not abandoned at the time of the argument of this case, if we leave the errors of law complained of at this point—as well as the question of the variance between the initials of Campbell, as set out in the information and proven on the trial. The claim made that the language of the court, supra, to which exception was taken, was prejudicial error, may also be disposed of in the same way. As to the error claimed by reason of the refusal of the court to give certain instructions requested by defendant. Many of them are disposed of already in this opinion. The first one, No. 12: While instructions somewhat similar are not new to the criminal practice of the State, upon reflection would seem unreasonable, in view of the fact that if not particularly requested by defendant and given by the court of its own motion or at the request of the prosecution, it would clearly have been in violation of a provision of statute. It is as follows: "No. 12. You are instructed that the defendant is not required to testify, and the jury have no right to presume anything against him, because he has failed to testify." It might be urged that this instruction would bear the interpretation that in addition to the legal presumption of innocence until guilt appears from the evidence beyond a reasonable doubt, if the defendant fail to testify, an additional presumption accrues to him, but if this requested instruction were less broad it would be subject to considerable objection. Our statute upon this subject differs from those of other States and from counsel's reading or quoting of it, and is as follows: "Sec. 5346. The defendant in all criminal cases, in all the courts in this State, may be sworn and examined

as a witness, if he so elect, but shall not be required to testify in any case. If the defendant so elect, he may make a statement to the jury without being sworn, but the neglect or refusal to make a statement shall not create any presumption against him, nor shall any reference be made to, nor shall any comment be made upon, such neglect or refusal." Counsel overlooked the words "nor shall any reference be made to."

The court did instruct the jury, at the request of the defendant, as follows: "The jury are instructed that the law presumes the defendant innocent in this case, and not guilty as charged in the information, and the presumption should continue and prevail in the minds of the jury until they are satisfied by the evidence, beyond all reasonable doubt, of the guilt of the defendant; and acting on this presumption the jury should acquit the defendant unless constrained to find him guilty by the evidence convincing them of such guilt beyond all reasonable doubt."

The language used by the court during the trial to which exception was taken was complained of as an incorrect definition of forgery, but it could not have been prejudicial as claimed when the instructions given by the court are considered. After instructing the jury as to the statute under which the defendant is being prosecuted, the court gave the following instructions:

"To utter and publish an instrument is to declare or assert, directly or indirectly, by words or actions that such instrument is true and genuine, and it is immaterial whether the same be accepted or not."

"The court instructs the jury that if they believe from the evidence, beyond reasonable doubt, that the instrument set forth in the information is a false or forged instrument; that the defendant knew the same to be false or forged, and that he uttered or published the same to Charles Swanson, with intent to prejudice, damage, or defraud the said Swanson, then you will find the defendant guilty as charged in the information."

There were eleven instructions given the jury that were requested by defendant, and eight refused; of the latter, three were peremptory instructions to the jury to find the defendant not guilty, and the remaining ones, if followed by the jury, would have precluded a verdict of guilty under the evidence in this case. The case demanded no further instructions than those given. Judgment affirmed.     *Affirmed.*

Potter, C. J., and Corn, J., concur.

### ON PETITION FOR REHEARING.

Corn, Justice.

Counsel for plaintiff in error urges with great persistence that the writing in this case is not a "letter of attorney or other power to receive money" under our statute. He presents only one authority where the instrument was similar in form to the one in this case. It is a Michigan decision, holding that a paper, authorizing the bearers to solicit subscriptions for the relief fund of a labor organization, was not a "letter of attorney" or "order for money," under the Michigan statutes. (People v. Smith, *112 Mich., 192.*) The difference between an authority to solicit subscriptions and an authority to collect and receive payment of money due for a specified service is so marked as to make the case practically valueless as an authority in this case. Moreover, the term employed in our statute is more comprehensive. An order for money, as explained in the Michigan decision, has a well understood meaning and usually contains a request or direction to a third party, who is indebted to the maker of the order, to pay such money to the person named. A power is an authority, whether evidenced by letter of attorney or otherwise. The word is defined in Bouvier's Law Dictionary as "technically, an authority by which one person enables another to do something for him;" and in Anderson's Law Dictionary it is defined as "the authority which one person gives another to act for him." Our statute enumerates as one of the subjects of forgery "any letter of attorney or other power to receive money,"

the purpose evidently being that if the writing in question was not in strictness a letter of attorney, yet if it was in substance and in fact a written authority to receive money, it should be deemed included within the penalties of the law. It is plain upon the face of the writing and without additional averments that this purports to be such an authority and is within the statute.

In support of his contention, that the information does not state an offence, counsel further presents an argument which, as we understand it, is as follows: The forged instrument must be the instrument of another, and the information must state or show that it is the instrument of another. That, in order to do this, the information must show whose instrument it is. That our statute provides that it must appear that it is either the instrument of a person, or body politic or corporate, and hence it is necessary that the information should state or show that it was either the instrument of a person or a corporation in addition to the other requirements necessary to constitute forgery. That the information does not so state or show. This is the reasoning as we understand it, and we think it is based upon some misconception of the principle relied upon.

It is true that, by all the authorities, the instrument must purport to be the instrument of another. But nothing more is meant than that if it purports to be the instrument of the defendant himself, whatever other criminal liability may be incurred by its execution, his offence is not forgery. A person cannot forge his own name or his own deed or other instrument. If, for instance, one executes an instrument, signing his own name as agent for another, although with intent to defraud, and, although he has no authority as agent, yet his offence is not forgery. This arises from the nature of the crime. True, it has been held that if there are two persons of the same name, one of them may, in some cases, commit forgery by signing his own name, as by endorsing a draft payable to a person of his name, though he knows that he is not the one intended. But this is not

an exception to the rule, for it is a forgery of the name of the other person, though the names are identical, and the essence of the offence is that the writing purports to be the instrument of such other person.

But as the instrument under consideration is not signed with the name of the defendant and does not purport to be made by himself, but by another, the principle can have no possible application in this case.

As to the proposition that our statute, Section 5128, requires that it must appear to be the instrument either of a person or corporation, it is sufficient to say that the statute contains no such requirement. The language referred to occurs in defining the intent necessary to constitute the offence. The information alleges the uttering to have been with intent to defraud one Charles Swanson. This allegation is sufficient and is sustained by the evidence. But, independent of any supposed statutory requirement upon the subject, the instrument upon its face clearly purports to be the act of the Rocky Mountain News, a newspaper published in Denver. And we think it is not material and need not be averred or proved whether the business concern known as the Rocky Mountain News is owned or conducted by an individual, a partnership, a corporation or an unincorporated company. It has been repeatedly held that where the writing purports to be the instrument of a company or corporation, it is not material whether such company or corporation has any existence or not. (Com. v. Smith, 6 Sergt. & R., 568; State v. Hayden, 15 N. H., 359; People v. Peabody, 25 Wend., 473; People v. Stearns, 21 Wendell, 409; Com. v. Carey, 2 Pickering, 49; State v. Van Hart, 17 N. J. L., 327.) The forgery of a deed was held to be complete, though there never was any such person as the supposed grantor in existence. (Anne Lewis case, Fost., 116, 118.)

2. The court refused to instruct the jury at the request of the defendant, that "the defendant is not required to testify and the jury have no right to presume anything against him because he has failed to testify." In the brief of counsel

upon the original hearing of this case it was said that it is uniformly held by the courts of last resort, in States having similar statutory provisions, that it is error to refuse the instruction when requested by the defendant, unless covered by another instruction. And in support of this statement three cases only are cited: State v. Evans (Kans. Ap.), 58 Pac., 240; State v. Magers (Or.), Id., 892, and State v. Carnagy (Ia.), 76 N. W., 805. The Kansas statute provides that the failure of the defendant to testify "shall not raise any presumption of guilt, nor shall that circumstance be referred to by any attorney prosecuting in the case, nor shall the same be considered by the court or jury before whom the trial takes place." As only the attorney for the prosecution, and not the court, is forbidden to refer to the matter, it is perhaps a reasonable construction of the statute that the court may properly inform the jury of the law that it raises no presumption of the defendant's guilt and of their duty to give it no consideration whatever in making up their verdict. The language of our statute, however, and apparently its policy, is different, for it provides "nor shall any reference be made to, nor shall any comment be made upon, such neglect or refusal." This language includes as well the court and the counsel for the defense as the attorney for the prosecution. The apparent purpose is that, in cases where the defendant does not desire to testify, the trial shall proceed, as nearly as practicable, as at common law, so far as the testimony of the defendant is concerned; that is, that he may rest upon his plea of not guilty, and the State must prove every element of the crime against him, or else he must be acquitted by force of the presumption of his innocence. And to accomplish this purpose the method selected by the Legislature was to forbid any reference to the matter whatever throughout the trial. In the Oregon case referred to nothing more is decided than that the failure of the court to instruct upon the subject was not error when the instruction had not been seasonably requested by the defendant, and the Oregon statute differs still more widely from ours. It

simply provides that his waiver of the right to testify shall not create any presumption against him, and it does not forbid either court or counsel to refer to or comment upon such waiver. The Iowa statute forbids the attorney or attorneys for the State to refer to defendant's failure to testify, but does not forbid such reference by the court or counsel for the defense. As these are the only cases referred to in discussing the question in the original brief, and as the statutes of those States are substantially different from ours, counsel's statement that it is uniformly held in States having similar statutory provisions that it is error to refuse the instruction when requested, can scarcely be said to be supported by the authorities cited.

But in the brief supporting the application for a rehearing we are referred to cases from Iowa, Texas, Nebraska, Vermont, Washington, Illinois, Maine, Colorado, California, Indiana, Mississippi, Louisiana, New York, Oregon and Kansas as supporting the view that, under the provisions of our statute, the instruction should have been given. Of the States named, the statutes of Indiana, Louisiana and Washington, under which the decisions referred to were rendered, in terms require the court to instruct upon the subject. They are not authority under our statute which forbids any reference to it. In others of the States named, as Mississippi and Texas, there is nothing, in addition to the provision that it shall create no presumption against him, except that it shall not be referred to or commented upon by counsel. And in others, as New York and Vermont, there is simply the provision that his failure to testify shall not create any presumption, or be considered as evidence against him, and reference to or comment upon it is not forbidden. The decisions from these States, therefore, do not involve any construction of the provision of our statute prohibiting any reference to defendant's failure to testify. But in several States there are provisions identical with, or very similar to, our own, and in some of them the statute has been construed. The language of the Nebraska statute is substantially the same

as ours. In Metz v. State, 46 Neb., 552, the Supreme Court of that State decided that, the defendant not having requested the court to instruct that his neglect to take the witness stand created no presumption against him, the court's omission to do so was not error. In the later case of Ferguson v. State, 52 Neb., 437, the same court decided that it was not error for the trial court to instruct the jury in regard to defendant's failure to go upon the witness stand, though the instruction was not requested by him. It is apparent that the question presented here was not before the court in either of those cases. In Ohio, where the statute is substantially the same as our own, there has been, so far as we are informed, no decision of the question by the Supreme Court. But in Sullivan v. State, 9 Ohio C. C. Rep., 652, where the trial court had instructed the jury upon the subject, upon its own motion, it is said that it would appear to be against the letter of the law, but not against its spirit. That "it would seem not to be in contravention of the spirit of the statute if the Judge, who may have seen the effect produced upon the jury by the failure of the defendant to testify in a particular case, should instruct them as to what the law requires of them in such case." In Missouri the statute provides that such failure to testify shall not "be referred to by any attorney in the case, nor be considered by the court or jury before whom the trial takes place." The Supreme Court of that State say there was no error in refusing such an instruction, and that if the court had given it, it would have disobeyed the spirit, if not the letter, of the law. (State v. Robinson, 117 Mo., 663.) The case of Farrell v. People, 133 Ill., 244, is also relied upon by counsel. But in that case the codefendant of plaintiff in error had testified and the court had given an instruction, on behalf of the State, as to the weight to be given to his testimony by which the attention of the jury was directed to the statute making defendants in criminal trials competent to testify in their own behalf. By this circumstance the instruction was made necessary for the protection of the defendant in his rights under the statute. In another case the same

court say: "The statute has, in unmistakable terms, declared, in effect, the omission of the accused to testify shall not be used to his prejudice or taken as an evidence of his guilt, and in such case court and counsel should studiously avoid all allusions to the subject." (Baker v. The People, 105 Ill., 458.)

In Fitzgerald v. The People, 156 N. Y., 253, cited by plaintiff in error, the error was not in refusing to give an instruction upon the subject, but the instruction given was held to be erroneous and prejudicial to the defendant. In that State the statute does not forbid reference to the subject, but simply provides that his neglect to testify shall not create a presumption against him, yet in the case of Ruloff v. the People, 45 N. Y., 222, where the Judge, in the course of his charge, had alluded to the failure of the defendant to testify, the Court of Appeals held that it was error as authorizing an inference to the prejudice of the prisoner; but, as upon his attention being called to it, he had explained to the jury that no inference was to be drawn against him from the fact of his not being sworn, the error was cured. And the court say that neither the prosecuting officer nor the Judge has the right to allude to the fact that a person has not availed himself of the statute.

But, not to prolong the discussion of authorities, the history of the legislation, permitting defendants to testify in their own behalf, shows that its wisdom was originally very much questioned, and the privilege was regarded as one of very doubtful benefit to the prisoner. In the case last mentioned the court say, "discreet counsel will hesitate before advising a client charged with high crimes to be a witness for himself, under all the disadvantages surrounding him." And in Vermont the Supreme Court say, "In the great body of cases no wise practitioner would permit his client, whether he believed him guilty or innocent, to testify when upon trial on a criminal charge." And they add, "His testimony is far more likely to injure him seriously than to help him a little." (State v. Cameron, 40 Vt., 565.) In this view of the prob-

able operation and effect of the statute, it was attempted by every available means, while giving him the privilege, at the same time to protect him from the apprehended dangers if he did not elect to avail himself of it. In this and other States the method adopted was to prohibit any reference to the matter from the beginning to the end of the trial, and to let the case be tried, as at common law, as if the defendant's testimony, owing to his interest in the result, would be entirely valueless and not to be taken into account.

This being plainly the purpose of the language used, we think the statute should have a reasonable construction to carry this purpose into effect. If counsel for the State should comment upon defendant's failure to testify, or if anything should occur in the course of the trial to make it appear that it was operating to create a prejudice against him, it would become the duty of the court to protect him in his legal rights, as far as possible, by proper instructions. In the absence of any such circumstances we are unable to perceive how the court can err by complying with the letter of the law.

There is no claim in this case that anything had occurred during the trial to call for the action of the court beyond the mere failure itself of the defendant to testify. And, therefore, while it would not have been error, of which the defendant could complain, to give the instruction, it was not error to refuse it. The general instruction of the presumption of innocence was sufficient.

3. One of the witnesses for the prosecution was permitted to state, over objection, that he had received a telegram from the Denver News, stating that the defendant was not authorized to act as their agent. The evidence should have been excluded. But the business manager of the paper was upon the witness stand and testified to the same fact. The error was not material or prejudicial to the defendant.

The other errors complained of were sufficiently considered in the former opinion of the court.       *Rehearing denied.*

POTTER, C. J., and KNIGHT, J., concur.