2017 WY 153

**Dorothy Jean RIDDLE, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

S-17-0083

Supreme Court of Wyoming.

December 21, 2017

Representing Appellant: Office of the State Public Defender: Diane M. Lozano, State Public Defender; Tina N. Olson *, Chief Appellate Counsel; Kirk Morgan, Senior Assistant Appellate Counsel; Eric M. Alden, Senior Assistant Appellate Counsel. Argument by Mr. Alden.

Representing Appellee: Peter K. Michael, Attorney General; David L. Delicath, Deputy Attorney General; Christyne M. Martens, Senior Assistant Attorney General; Adam Leuschel, Assistant Attorney General. Argument by Mr. Leuschel.

Before BURKE, C.J., and HILL, DAVIS, FOX, and KAUTZ, JJ.

BURKE, Chief Justice.

[¶1] Appellant, Dorothy Jean Riddle, was convicted of forgery. She challenges that conviction in this appeal. She asserts that there was insufficient evidence to support a conviction under the specific subparagraph of the forgery statute that she was charged with violating. We reverse.

### ISSUE

[¶2] Was there sufficient evidence to support Ms. Riddle's forgery conviction under Wyo. Stat. Ann. § 6-3-602(a)(ii) (LexisNexis 2013)?

*An order granting Ms. Olson's Motion to With-

## FACTS

[¶3] The facts of this case are relatively straightforward and, in large measure, undisputed. Ms. Riddle deposited a $4,000 check in a joint account that she held with her son, Dalton. The check was written on the account of her mother-in-law, and was made payable to Dalton Riddle. The signature on the check indicated that it had been executed by the mother-in-law.

[¶4] The mother-in-law learned of the existence of the check when she received an overdraft notice on her account. She notified police that the check had been stolen and that she believed the theft took place while she was out of town. She did not write or sign the check and did not authorize anyone else to write a check for that amount in her name.

[¶5] During the ensuing investigation, law enforcement reviewed surveillance video from the credit union where the check had been deposited. The video revealed that the deposit was made by Ms. Riddle. She was subsequently arrested and charged with forgery under Wyo. Stat. Ann. § 6-3-602(a)(ii). A jury trial was held and she was found guilty. A subsequent motion for a judgement of acquittal was denied and Ms. Riddle was sentenced to a prison term of four to eight years. That sentence was suspended and she was placed on probation. She filed this timely appeal.

## STANDARD OF REVIEW

[¶6] When reviewing a sufficiency of the evidence claim in a criminal case, [w]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

draw was entered on December 13, 2017.

*Bean v. State*, 2016 WY 48, ¶ 44, 373 P.3d 372, 386 (Wyo. 2016) (quoting *Guerrero v. State*, 2012 WY 77, ¶ 14, 277 P.3d 735, 738–39 (Wyo. 2012)).

*Mraz v. State*, 2016 WY 85, ¶ 18, 378 P.3d 280, 286 (Wyo. 2016). To evaluate the sufficiency of the evidence in this case, however, we must first determine the specific conduct prohibited by Wyo. Stat. Ann. § 6-3-602(a)(ii). "Statutory interpretation raises questions of law, which we review *de novo*." *PacifiCorp, Inc. v. Dep't of Revenue*, 2017 WY 106, ¶ 9, 401 P.3d 905, 908 (Wyo. 2017).

### DISCUSSION

[¶7] The Wyoming statute defining forgery, Wyo. Stat. Ann. § 6-3-602, provides as follows:

(a) A person is guilty of forgery if, with intent to defraud, he:

(i) Alters any writing of another without authority;

(ii) Makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

(iii) Utters any writing which he knows to be forged in a manner specified in [sub]paragraphs (i) or (ii) of this subsection.

Ms. Riddle was charged with "transferring" under subparagraph (ii).

[¶8] Ms. Riddle contends that, to be convicted of forgery under subparagraph (ii) of the statute, the "transfer" must cause the "writing" to "purport to be the act of another." She claims that the State never established the causal connection in this case. In her words: "Taking the check to the bank and representing it to be genuine did not cause the check to purport to be the act of the [mother-in-law]." She asserts that presenting a check at a bank with knowledge that it is forged would constitute "uttering," which is the conduct prohibited by subparagraph (iii) of the forgery statute. Ms. Riddle

was not charged with violating that portion of the statute.

[¶9] In response, the State asserts that the evidence presented at trial was sufficient for conviction "because it demonstrated that [Ms.] Riddle deposited a forged check." According to the State, Ms. Riddle's conduct falls within the definition of forgery under Wyo. Stat. Ann. § 6-3-602(a)(ii) because "[d]epositing the check caused the funds to pass from [the mother-in-law's] account to Dorothy Riddle's account." The State appears to concede that it could have charged Ms. Riddle with "uttering" under subparagraph (iii) of the statute, but contends that the charging decision is simply a matter of prosecutorial discretion and does not invalidate the conviction obtained in this case.

[¶10] When interpreting statutes, our primary consideration is determining legislative intent. *Wofford v. City of Laramie*, 2016 WY 59, ¶ 9, 375 P.3d 740, 743 (Wyo. 2016). We do so by looking first to the plain and ordinary meaning of the words to determine if the statute is ambiguous. *Carrillo v. State*, 2005 WY 31, ¶ 5, 107 P.3d 786, 788 (Wyo. 2005). There is no contention in this case that the statutory language is ambiguous. If a statute is unambiguous,

our inquiry revolves around the ordinary and obvious meaning of the words employed according to their arrangement and connection. In doing so, we view the statute as a whole in order to ascertain its intent and general purpose and also the meaning of each part. We give effect to every word, clause and sentence and construe all components of a statute *in pari materia*.

*Id.*, ¶ 5, 107 P.3d at 789. Further, "in ascertaining the meaning of a given law, all statutes relating to the same subject or having the same general purpose must be considered and construed in harmony." *Wofford*, ¶ 9, 375 P.3d at 743.

[¶11] As previously mentioned, Ms. Riddle was convicted of forgery under subparagraph (ii) of the forgery statute. However, to provide context for our discussion of subparagraph (ii), and keeping in mind our obligation to harmonize all of the statutory provisions,

we turn first to a brief review of the historical roots of the crime of forgery.

[¶12] "Blackstone's definition of forgery (3 Com. 247) as 'the fraudulent making or alteration of a writing to the prejudice of another man's rights' is frequently quoted by the courts." 23 Am. Jur. *Forgery* § 2, at 676 (1939). "Among the concomitants of the act of forgery may be found the uttering of a forged instrument, which consists in offering to another the forged instrument with a knowledge of the falsity of the writing and with intent to defraud." *Id.*, § 5, at 677. We recognized these three ways to commit forgery—altering, making, and uttering—in *Hamburg v. State*, 820 P.2d 523, 526 (Wyo. 1991):

> Forgery is generally defined as the false making or materially altering, with intent to defraud, [of] any writing, which if genuine, might apparently be of legal efficacy, or foundation of legal liability. While the forgery statutes in the various jurisdictions may be slightly different, the gist of the offense of forgery is the false making of an instrument or uttering of such instrument with intent to defraud.

(Internal citations omitted.)

[¶13] Wyoming's current forgery statute was adopted in 1982. 1982 Wyo. Sess. Laws ch. 75, § 3, at 547–48. Its language is nearly identical to the forgery provision of the Model Penal Code. American Law Institute, *Model Penal Code and Commentaries* § 224.1, at 281 (1980). Consistent with the history of the crime, the three subparagraphs of Wyo. Stat. Ann. § 6-3-602(a) reflect the three generally accepted methods of committing forgery. Subparagraph (a)(i) applies to altering a writing, subparagraph (a)(ii) applies to making a writing, and subparagraph (a)(iii) applies to uttering a writing.

[¶14] With that background, we begin our analysis of subparagraph (ii) of Wyo. Stat. Ann. § 6-3-602(a). This subparagraph provides that a person is guilty of forgery if, with intent to defraud, she:

> Makes, completes, executes, authenticates, issues or **transfers any writing so that it purports to be the act of another who did not authorize that act**, or to have been executed at a time or place or in a

numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed.

(Emphasis added.) In this case, we are concerned with the commission of forgery by "transfer." There is no statutory definition for the word "transfers" as used in Wyo. Stat. Ann. § 6-3-602(a)(ii). The State asserts that the word should be given its plain and ordinary meaning, and offers this definition from *Webster's New Collegiate Dictionary* 1253 (1984): "To convey from one person, place, or situation to another; to cause to pass from one to another." The State contends that the evidence demonstrated that Ms. Riddle passed or transferred funds from the mother-in-law's account into her own account, thereby committing forgery.

[¶15] We agree with the State that the statutory word "transfers" must be interpreted according to its plain and ordinary meaning. When interpreting a statute, we look first to the plain and ordinary meaning of the words. *Krenning v. Heart Mt. Irrigation Dist.*, 2009 WY 11, ¶ 9, 200 P.3d 774, 778 (Wyo. 2009); *Carrillo*, ¶ 5, 107 P.3d at 788. Unless another meaning is clearly intended, words and phrases must be taken in their ordinary and usual sense. *Yager v. State*, 2015 WY 139, ¶ 11, 362 P.3d 777, 780 (Wyo. 2015) (citing *Jones v. State*, 2011 WY 115, ¶ 11, 256 P.3d 536, 541 (Wyo. 2011)). Nothing in the language of Wyo. Stat. Ann. § 6-3-602 suggests that the word "transfers" is intended to have any meaning other than its plain and usual meaning. However, for reasons explained below, we believe that the more applicable plain and ordinary meaning is this: "to print or otherwise copy from one surface to another by contact." *Webster's Ninth New Collegiate Dictionary* 1253 (1991).

[¶16] That determination does not end our analysis, however. We cannot consider the word "transfers" in isolation. Instead, we must "construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection." *PacifiCorp*, ¶ 10, 401 P.3d at 908 (quoting *Nicodemus v. Lampert*, 2014 WY 135, ¶ 13, 336 P.3d 671, 674 (Wyo. 2014)). Subparagraph (ii) applies to

one who "transfers any writing so that it purports to be the act of another," and we must interpret that provision as a whole.

[¶17] The phrase "so that it purports to be the act of another" is an adverbial clause modifying the verb "transfers." Marcella Frank, *Modern English: A Practical Reference Guide* 232 (2d ed. 1993). More specifically, the "so that" language signals an adverbial clause of result. *Id.* at 247; *see also Merriam-Webster's Dictionary of English Usage* 856–57 (1994). The action indicated by the verb in the main clause results in the condition indicated in the adverbial clause. Frank, *supra*, at 247. Examples of adverbial clauses of result include, "The children had rehearsed many times, so (that) their school play was very successful," and "They spent their vacation at the seashore, so (that) when they came home they were quite tan."[1] *Id.* In the first example, rehearsing many times resulted in a successful school play. In the second, spending vacation at the seashore caused suntans. There is a "cause-effect relationship" between the verb in the main clause and the condition in the adverbial clause. *Id.*

[¶18] In the statutory phrase "transfers any writing so that it purports to be the act of another," there is a cause-effect relationship between the verb "transfers" and the adverbial clause "so that it purports to be the act of another." The transfer must cause the writing to purport to be the act of another. We do not reach this interpretation by giving the word "transfers" any specialized meaning. We give the word its plain and ordinary meaning, but recognize that the verb "transfers" is limited by the modifying adverbial clause.

[¶19] This interpretation is consistent with the requirement that we must endeavor to provide meaning to all provisions of the forgery statute and construe those provisions in harmony. Under the third statutory subparagraph, Wyo. Stat. Ann. § 6-3-602(a)(iii), a person commits forgery if he "[u]tters any writing which he knows to be forged in a

manner specified under [sub]paragraphs (i) or (ii) of this subsection." "Uttering" is the "crime of presenting a false or worthless instrument with the intent to harm or defraud." Black's Law Dictionary 1687 (9th ed. 2009). This definition tracks with the definition of "uttering" set forth in a jury instruction that this Court approved over a century ago:

> To utter and publish an instrument is to declare or assert, directly or indirectly, by words or actions, that such instrument is true and genuine, and it is immaterial whether the same be accepted or not.
> The court instructs the jury that if they believe from the evidence, beyond reasonable doubt, that the instrument set forth in the information is a false or forged instrument; that the defendant knew the same to be false or forged; and that he uttered or published the same to Charles Swanson, with intent to prejudice, damage, or defraud the said Swanson, then you will find the defendant guilty as charged in the information.

*Leslie v. State*, 10 Wyo. 10, 22, 65 P. 849, 852 (1901) (some punctuation omitted).

[¶20] If we interpreted the phrase "transfers any writing so that it purports to be the act of another" as the State urges—to mean simply conveying from one person, place, or situation to another—then every "transfer" would also be an "uttering." This would render the "uttering" subparagraph redundant and unnecessary, contrary to a "fundamental rule of statutory interpretation that ... every word, clause, and sentence must be construed so that no part is inoperative or superfluous." *Wofford*, ¶ 9, 375 P.3d at 743 (quoting *Deloges v. State ex rel. Wyo. Worker's Comp. Div.*, 750 P.2d 1329, 1331 (Wyo. 1988)).

[¶21] Additionally, and perhaps more significantly, the State's position is inconsistent with the language of Wyo. Stat. Ann. § 6-3-602(a)(iii). This subparagraph provides that a person commits forgery if he "[u]tters any writing which he knows to be forged in a

---

1. The parentheses around the word "that" in these two quoted examples indicate the word "that" may sometimes be omitted, leaving the word "so" standing alone, but still creating an adverbial phrase of result. *See Merriam-Webster's Dictionary of English Usage* at 856–57 (discussing the use of "so that" versus the solo "so").

manner specified in [sub]paragraphs (i) or (ii) of this subsection." This indicates sequential actions: a document must first be forged in a manner specified in subparagraphs (i) or (ii) before it can then be uttered under subparagraph (iii). Under the State's interpretation of "transfers" and "utters" as synonymous, the "transfer" and the "uttering" occur at the same time, not sequentially as required by the statutory language.

[¶22] As mentioned earlier, the Wyoming forgery statute is nearly identical to § 224.1 of the Model Penal Code. With regard to "uttering," one comment to the Model Penal Code explains: "Subsection (1)(c) is designed to extend the reach of Subsections (1)(a) and (1)(b) to include within the penalties for forgery one who knowingly circulates forged writings as well as one who makes or otherwise completes the forgery itself." *Model Penal Code, supra,* § 224.1, cmt. 6, at 300. This comment indicates that the word "transfers" in subsection (ii) of the Wyoming statute should be interpreted in the sense of making or otherwise completing the forged document, not moving it from place to place or person to person.

[¶23] The State contends that it has the prosecutorial discretion to charge a defendant either with "transferring" a writing under subparagraph (ii) of the statute or with "uttering" a writing under subparagraph (iii). We agree that a "prosecutor is vested with the exclusive power to determine who to charge with a crime and with what crime to charge them." *DeLeon v. State,* 896 P.2d 764, 768 (Wyo. 1995) (citing *Billis v. State,* 800 P.2d 401, 417 (Wyo. 1990)). However, the assumption underlying the State's invocation of prosecutorial discretion is that the statutory terms "transfers any writing so that it purports to be the act of another" and "[u]tters any writing which he knows to be forged" are synonymous. As already discussed, we reject that interpretation because it renders subparagraph (iii) meaningless and superfluous.

[¶24] For these reasons, we are convinced that Wyo. Stat. Ann. § 6-3-602(a)(ii) criminalizes conduct by which the transfer causes the writing to purport to be the act of another. This interpretation gives the word "transfer" its plain and ordinary meaning of "to print or otherwise copy from one surface to another by contact," but further requires that the result of such transfer is that the writing purports to be the act of another. Forgery by transfer may be accomplished, for example, by "actually transferring a genuine signature from one document to another which is to be forged." K.S. Puri, *Forgery by Physical Transfer,* 59 J. Crim. L. Criminology and Police Science 144 (1968).

> There are many ways to make such transfers, but popular among them is the use of a chemical or painting the document lightly with a transparent "sticky solution", and then transferring the signature from one document, by rubbing it from the back on to the sticky portion. In this way, the mirror image of the signature will be obtained on the sticky paper. The process is again repeated on another paper, and the signature will be reversed to appear in the proper form.

*Id.*

[¶25] Applying our interpretation of the phrase "transfers any writing so that it purports to be the act of another" to Ms. Riddle's case, we agree with her that the evidence presented by the State was insufficient to support her conviction. The State charged Ms. Riddle with the "transfer" of the check written on her mother-in-law's account, but it used that word only to mean that she conveyed or passed the check from one place to another or from one person to another. The State did not present any evidence that Ms. Riddle's "transfer" of the check resulted in its purporting to be the act of another. It presented no evidence that Ms. Riddle wrote the check, signed it, or took any other action that caused the check to be false. Instead, at trial, the State took the position that such evidence was not necessary to secure a conviction. During opening, the prosecutor told the jury that "Dorothy Riddle is guilty of Forgery because she passed a check purporting it to be that of another." She emphasized the point during closing argument: "The issue here is very simple. Did Dorothy Riddle pass a check off of [the mother-in-law's] account that she was not authorized to pass?" She continued:

Do we know who filled out that check? No, we don't know who filled it out, but we know it wasn't [the mother-in-law], and what we do know is all we need to know in the crime of Forgery. ... We don't have to prove that [Ms. Riddle] came into the house, ripped two checks out of the back of the book, wrote them, and then tried to pass them. We only have to prove that she tried to transfer that check. We only have to prove that she tried to transfer that check and she didn't have authority to do so.

[¶26] Based upon our review of the record, we are forced to conclude the evidence was insufficient to support a conviction for forgery under Wyo. Stat. Ann. § 6-3-602(a)(ii). Accordingly, we reverse Ms. Riddle's forgery conviction and remand with instructions to enter a judgment of acquittal.