■ ZURICH INSURANCE COMPANY et al., Respondents-Appellants, v TRAVELERS INDEMNITY COMPANY et al., Appellants-Respondents, et al., Defendants. TRAVELERS INDEMNITY COMPANY, Third-Party Plaintiff-Appellant-Respondent, v INTERNATIONAL INSURANCE COMPANY, Third-Party Defendant-Appellant-Respondent.—Order, Supreme Court, New York County (Harold Tompkins, J.), entered on or about July 17, 1991, which denied the motion and cross-motions of the respective parties seeking summary judgment, affirmed, without costs.

This action concerns apportionment of a $775,000 settlement reached in a personal injury action originally brought in Federal court. The action arose out of an automobile accident which occurred in New York State. The car was rented from Avis Rent-A-Car by Pascal DiPaola, an employee of defendant Morton Thiokol, but was operated ·by a companion, Arthur Morgan, who concededly was a general employee of plaintiff Allstates Design & Development Company. Morgan, who at the time was working with DiPaola pursuant to a personal services contract between Allstates and Thiokol, was killed in the accident which occurred while he and DiPaola were returning to New York after performing work for Thiokol in Connecticut. Allstates and its automobile liability insurer, Zurich Insurance Company, commenced this action against Morton Thiokol and its business automobile insurer, International Insurance Company, Avis, Morgan's estate and Morgan's individual automobile liability insurer, Travelers Indemnity Company, seeking an adjudication of the various insurers' coverage responsibilities with respect to the accident.

It can be said of this case that it presents what has been termed " 'a court's nightmare' ", i.e., the task of "establishing a pecking order among multiple insurers covering the same risk" *(State Farm Fire & Cas. Co. v LiMauro,* 65 NY2d 369, 372).* The task is complicated further in this case by the

various agreements regarding the risk entered into by the various insureds. While all of the parties may agree that summary judgment is appropriate, each party relies on its own version of the facts and inferences to be drawn therefrom. Consequently, numerous issues of fact exist which preclude an award of summary judgment in this case at this juncture (*Rotuba Extruders v Ceppos,* 46 NY2d 223, 231).

The question of whether Morgan, Allstates' general employee, was also Thiokol's special employee at the time of the accident is an issue of fact (*see, O'Brien v Garden Way Mfg.,* 72 AD2d 860). The settlement in which Avis contributed $100,000 on behalf of Allstates and Morgan, Travelers contributed $300,000 on behalf of Morgan and Zurich contributed $375,000 on behalf of Allstates was reached before any findings of fact were made. Consequently, Morgan's employment status was never determined by the Federal court. The parties in this litigation should not be bound by the allegations in the pleadings served and filed by DiPaola as plaintiff in the Federal action. Moreover, it cannot be said that the uncertainty as to Morgan's employment status was fully considered in the settlement of the Federal action; the issues concerning apportionment were not fully explored and the parties thereto expressly reserved their rights with respect to any and all insurance coverage claims arising out of the settled action.

The determination of Morgan's employment status is relevant to several unresolved coverage issues, not the least of which is that of whether, and the extent to which, Allstates is to be held vicariously liable for Morgan's negligence. Determination of Morgan's employment status is directly relevant also to the applicability of the so called, "Wiz Aid Agreement", pursuant to which Avis would provide $1,000,000 in primary liability coverage to Thiokol employees operating Avis-owned vehicles in the course of Morton Thiokol business. Specifically, the agreement allows Thiokol to permit "any licensed driver with whom the Company [Thiokol] has business dealings, including business associates, customers, prospective employees, and suppliers to use the vehicle during its rental". However, it also provides that any such person who is a permitted driver but who is not an employee of Thiokol shall only be entitled to the benefit of the insurance coverage provided by the rental agreement. If Morgan is determined not to have been a special employee of Thiokol, then the provisions of the rental agreement would control. However, if Morgan is determined to have been a special employee of Thiokol, then further issues are raised with respect to the nature of the

coverage he is entitled to under the agreement and the applicability of the fellow employee exclusions contained in the standard automobile liability policy procured by Avis for the purposes of providing coverage pursuant to the "Wiz Aid Agreement".

Additional triable issues of fact are raised by ambiguities in sharply conflicting clauses of the various policies and related agreements *(see, Ehrlich v Abrams Instrument Corp.,* 53 AD2d 825). For example, the scope of Allstates' liability, if any, pursuant to the broad hold-harmless clause in the personal services contract, executed by Thiokol and Allstates and the separately executed hold-harmless agreement, denominated a "release", executed by Allstates is ambiguous. In addition the distinctions between "your car", "non-owned car" and "substituted car" and the exclusion for a car "for a fee" in Travelers' policy covering Morgan individually are ambiguous.

In addition to the above, questions exist with respect to certain exclusions in Zurich's policy issued to Allstates, which could be triggered if Morgan is determined to have been a Thiokol special employee at the time of the accident, and with respect to whether Zurich is seeking subrogation against its own insured *(see, Pennsylvania Gen. Ins. Co. v Austin Powder Co.,* 68 NY2d 465, 472). The parties' intent with respect to the choice-of-law issues raised cannot be determined from the various agreements *(see, Steinbach v Aetna Cas. & Sur. Co.,* 81 AD2d 382, 385). This is significant, since this being a matter of loss allocation and not of regulation of conduct, a "grouping of contacts" analysis is appropriate *(see, Salsman v Barden & Robeson Corp.,* 164 AD2d 481, 484). Also, it has not been demonstrated that the Travelers' policy was issued or delivered in New York. Therefore Insurance Law § 3420 (d) does not apply, and the remaining parties may seek estoppel of Travelers' disclaimer of coverage only at common law. This requires a showing of prejudice, which raises yet another question of fact *(see, e.g., American Stevedores v Sun Ins. Off.,* 42 Misc 2d 516, 518, *affd* 23 AD2d 966). Concur—Ross, Asch and Smith, JJ.

Sullivan, J. P., and Carro, J., dissent in a memorandum by Sullivan, J. P., as follows: This declaratory judgment action essentially between a number of liability insurers is an outgrowth of a January 29, 1986 automobile accident on a New York State highway. Arthur Morgan, who was an employee of Allstates Design & Development Company, Inc., assigned to work at Morton Thiokol, Inc. as a facility project engineer pursuant to a Labor Hour Purchase Order agreement between

Allstates and Morton Thiokol, and Pascal DiPaola, an employee of Morton Thiokol, had driven to Connecticut on Morton Thiokol business from an airport in Westchester County, where DiPaola had rented a New York registered car from defendant Avis Rent-A-Car System, Inc. On the return trip, while Morgan was driving, the rented car was involved in an accident in which Morgan was killed and DiPaola suffered head and neck injuries. Shortly thereafter, DiPaola commenced a personal injury action in the United States District Court for the District of Maryland against Allstates, based on its vicarious liability, as Morgan's employer, for his negligence. Allstates, in turn, interposed a third-party action against Morgan's estate, seeking full indemnification for Morgan's active negligence.

This action was commenced by Allstates and its automobile liability insurer, Zurich Insurance Company, for a determination as to the respective liabilities of the various insurers affected by the accident. The other parties are Avis, Morgan's estate and his individual automobile liability insurer, Travelers Indemnity Company, which issued its policy in his wife's name, and Morton Thiokol and its business automobile insurer, International Insurance Company. While this declaratory judgment action was pending, the parties settled the underlying negligence action for $775,000, with Avis paying $100,000 on behalf of Allstates and Morgan, Travelers $300,000 on behalf of Morgan and Zurich $375,000 on behalf of Allstates. As part of their settlement, the Morgan estate assigned to Allstates, Zurich and Travelers all claims and rights it had against Morton Thiokol, International and Avis.

The parties appeal from an order denying their respective motions or cross-motions for summary judgment based on the IAS court's determination, *inter alia,* that Morgan's employment status was unclear. The parties have submitted various affidavits and answers to interrogatories, but on this record it cannot be discerned whether Morgan was, as claimed, a special employee of Morton Thiokol. While it is well settled that one who is in the general employment of one party may be in the special employment of another *(Cameli v Pace Univ.,* 131 AD2d 419, 420), since the parties to this dispute settled the underlying action before any findings of fact were made, thus precluding a determination of Morgan's employment status, that factor, which was fully taken into account in the settlement of the action, is totally irrelevant to the disposition of this case. As all parties agree, the matter is ripe for summary judgment and may be disposed of on the submis-

sions. On review of the record, I would hold Avis and Zurich, Allstates' insurer, liable for the loss, Avis for $100,000 and Zurich for the $675,000 balance.

The main thrust of the appeal is an argument, advanced by Travelers, International and Morton Thiokol, that Avis is responsible for the entire $775,000 settlement under the terms of a certain "Wiz-Aid Agreement" entered into between Avis and Morton Thiokol, pursuant to the terms of which $1,000,000 of primary liability coverage was to be provided for Morton Thiokol employees operating Avis-owned vehicles on Morton Thiokol business. Avis's $100,000 contribution to the settlement was based on its Rental Agreement with DiPaola, which, in pertinent part, provided, "Anyone permitted by this agreement to drive the car will be protected against liability for causing bodily injury or death up to limits of coverage of $100,000 for each person, but not more than $300,000 for each accident." By express provision of the agreement, Morgan qualified as an authorized driver of the rented car.

The Wiz-Aid Agreement was apparently intended to promote Morton Thiokol's use of Avis for car rentals by offering preferential rates and increased liability coverage. As used in the contract, the term "renters" includes "any employee of [Morton Thiokol] (regardless of whether such employee has signed a rental agreement) who, in the course of his employment, is operating a vehicle rented from Avis with the consent (written, oral or tacit) of an employee who has signed the rental agreement." Travelers, International and Morton Thiokol argue that Morgan, an Allstates' employee, who, by virtue of the relationship between him and Morton Thiokol, was also the special employee of Morton Thiokol and who, as a "fellow employee" with respect to the Rental Agreement, was permitted to drive the rented car, also qualifies as an employee of Morton Thiokol for purposes of the $1,000,000 limit automobile coverage under the Wiz-Aid Agreement.

This argument is unavailable since, as noted, the underlying action was settled without any finding of special employment between Morgan and Morton Thiokol. Moreover, the complaint in the underlying action alleged that Morgan, at the time of the accident, was an Allstates employee acting in the course of his employment. This is the claim that was settled and for which $775,000 was paid. It is too late in the day to assert a different employee status now. In this regard, it should be noted, the majority offers a plethora of supposed issues of fact, the most prominent of which is Morgan's employment status. The fundamental flaw in this approach is

the notion that the underlying questions of tort liability, which have been rendered moot by the insurers' settlement of the DiPaola action, can be reached and resolved at a trial of this action. It was precisely to avoid an adverse result in the disposition of those issues that the DiPaola action was settled. Thus, the coverage questions must be resolved on the basis of the aborted factual record the parties have tendered. Had they wanted a factual resolution of the tort issues, they could have obtained the same but, of course, at a substantial risk to each of them of an adverse determination.

Finally, on this point, even if Morgan were found to be an employee of Morton Thiokol, such finding of special employee status would be self-defeating. If Morgan were a special employee of Morton Thiokol, that would indeed relieve Avis entirely of any liability to DiPaola pursuant to the fellow-employee exclusion of Avis's policy, Part IV (C) (4), a standard insurance policy provision. Under Avis's policy, Part IV (D) (2), Morgan, driving a "covered" automobile with Avis's permission, was an insured and, thus, Avis properly contributed its policy limit to satisfy the third-party defendant's decedent's (Morgan) liability. Under Part IV (D) (3), Allstates is also an insured under the Avis policy as one who is "liable for the conduct of an insured."

Zurich, which covered Allstates under a business automobile liability policy with a $1,000,000 limit each occurrence, argues that Avis is responsible for the first $100,000 of the $775,000 settlement and that the responsibility for the balance of the $775,000 should be prorated between the Travelers and International policies, which insured Morgan and Morton Thiokol, respectively. This argument is premised upon the claim that Morgan is not an insured under the Zurich policy, which provides that, in addition to the named insured, Allstates and related entities, "Anyone else is an insured while using with [Allstates'] permission a covered auto (defined as any auto) [Allstates] own[s], hire[s] or borrow[s]". The policy provides that only the named insured is an insured with respect to any automobile. Since Allstates did not own, hire or borrow the Avis rental car, Zurich argues, its policy did not cover Morgan for the DiPaola accident. This argument misses the point. It is not Morgan for whose potential liability Zurich contributed $375,000 but rather Allstates, its named insured, who was the only defendant in the underlying action and whose liability, according to the complaint in that action, was predicated upon Morgan's negligent operation of an automobile in the course of his employment with Allstates. Thus, that Morgan was not

an insured under the Zurich policy is an irrelevancy. Zurich is obligated to pay because the accident, as alleged and as its settlement contribution recognizes, was, in accordance with policy terms, the result of Allstates' "ownership, maintenance or use" of the rented vehicle. As the DiPaola complaint alleges, Morgan's negligence, committed in the course of his employment with Allstates, is imputed to Allstates and that negligence is a covered incident, irrespective of whether Morgan is independently covered.

In any event, since a corporation can only act through its agents *(Oliner v Mid-Town Promoters,* 2 NY2d 63), and clearly Morgan was, in effect, Allstates in the operation of the Avis rental car, the argument rings hollow. In this connection, too, it has been held that the name of the insured as stated in the policy "is not always important if the intent to cover the risk is clear." *(Matter of Lipshitz v Hotel Charles,* 226 App Div 839, 840, *affd* 252 NY 518; *Matter of Black v Swetnick,* 281 App Div 997, 999.) Moreover, in the purchase order issued to Morton Thiokol, Allstates committed itself to provide $1,000,000/$2,000,000 bodily injury coverage for its employee, Morgan, and expressly recognized that Morgan might be called upon by Morton Thiokol to travel by automobile. Thus, Zurich's liability is clear.

Moreover, since Allstates, by the terms of the agreement under which it loaned Morgan to Morton Thiokol, contractually assumed the responsibility for providing $1,000,000/$2,000,000 bodily injury liability insurance for Morgan, it is clear that it was Allstates, not Morton Thiokol or International, its insurer, which was to provide the insurance for any liability arising out of Morgan's assignment to Morton Thiokol, including the underlying accident. Furthermore, the hold harmless agreements executed by both Morgan and Allstates in connection with Morgan's assignment to Morton Thiokol confirm that Allstates and its insurer, Zurich, not Morton Thiokol or International, would be responsible for any injuries caused by Morgan's performance of his duties at Morton Thiokol, except those caused solely by the negligence of Morton Thiokol. Parties are free to allocate their own potential liabilities. *(See, Gross v Sweet,* 49 NY2d 102, 108.) Thus, Morton Thiokol and, in turn, its insurer, International, were relieved of any liability for Morgan's liability for work-related accidents during the period of his assignment to Morton Thiokol.

Finally, Travelers, which issued a personal automobile liability policy to Morgan's wife, asserts as controlling on the

question of its liability policy exclusion 4 (b), excepting from coverage "any *non-owned* car while being used in any * * * business or occupation of the insured" (emphasis in original). Thus, in clear and unambiguous language, the Travelers policy excluded coverage for the Avis rental car involved in the underlying accident. It is claimed, however, that Travelers waived its right to assert this policy defense for failure to disclaim to its insured, the estate of Morgan, and by assuming the defense of the third-party claim in the underlying action. In that connection, Insurance Law § 3420 (d), relied upon by Zurich in support of this argument, requires "written notice as soon as is reasonably possible of such disclaimer of liability or denial of coverage to the insured and the injured person or any other claimant." That section has application only to a "policy delivered or issued for delivery in this state" *(id.)* and, at all relevant times, Morgan was a resident of Delaware. Thus, by its very terms, Insurance Law § 3420 (d) is inapplicable. In any event, none of the insurers herein can claim the benefit of such a provision, even if it were applicable, since they are not the "insured", "injured person" or "other claimant" under the Travelers policy. Nor are they equitably subrogated to the rights of the insured under the Travelers policy inasmuch as none of them paid any loss on behalf of Morgan. Even Zurich, as it argues throughout, had an exposure limited to Allstates' liability, for which it contributed $375,000 to the settlement.

Nor has Travelers, under common law principles, taken any actions which would constitute a waiver of or estop it from asserting a policy defense in this coverage dispute. A waiver, the intentional relinquishment of a known right, may be accomplished "by such conduct or failure to act as to evince an intent not to claim the purported advantage." *(Hadden v Consolidated Edison Co.,* 45 NY2d 466, 469.) From the time of its initial involvement with the claim, however, Travelers advised Zurich that its coverage was excess to other available coverages. In its answer in this action, interposed over one and one-half years before the settlement of the underlying action, Travelers asserted the business exclusion. Thus, its rights were preserved with respect to Zurich and the other interested insurers. Nor is there any issue as to estoppel, defined as "a bar which precludes a person from questioning a fact which he has by his conduct induced another person to believe and to act on to his prejudice." (57 NY Jur 2d, Estoppel, Ratification, and Waiver, § 1.) None of the other parties involved in this matter have been prejudiced in any

way by Travelers providing a defense and contributing to the settlement of the underlying action. The other insurers were on notice of Travelers's position.

Since Avis's policy provides primary coverage for the automobile it rented to DiPaola, it is liable for the full $100,000 which it has already paid in settlement. Under Zurich's "other insurance" provision its policy is excess since the vehicle involved was not owned by its insured, Allstates. Thus, in accordance with the foregoing, Zurich is solely responsible for the settlement balance of $675,000. A declaration to the effect should be made, the order appealed from reversed and summary judgment granted.