# MONTGOMERY v. LOCOMOTIVE ENGINEERS' MUTUAL LIFE & ACCIDENT INS. ASS'N.

(No. 1822; April 10, 1934; 31 Pac. (2d) 71)

(Re-hearing denied June 19, 1934)

For the plaintiff in error, there was a brief and oral argument by *Clyde M. Watts* of Cheyenne.

For the defendant in error, there was a brief and oral argument by *Mr. M. A. Kline* of Cheyenne.

BLUME, Justice.

This is an action on two life insurance policies for $1500 each, issued to Donald Montgomery, generally referred to as the decedent, by the Locomotive Engineers Mutual Life and Accident Insurance Association. Plaintiff in the case is Vera Montgomery, who became beneficiary under the policies on March 30, 1931. The court found against the plaintiff and she has appealed. The parties will ordinarily be referred to herein as in the case below, the defendant at times as the Insurance Association.

The insurance association is a mutual company, insuring only persons in good standing in the Brotherhood of Locomotive Engineers, sometimes referred to as the B. of L. E. Donald Montgomery, being such a member, was insured by the insurance association

herein on May 7, 1907. Some time in 1926, he became wholly incapacitated for work, and some time thereafter entered what is referred to as the Highland Park Home, situated in Illinois, an institution kept by the B. of L. E. and supported by dues of its members. He died while in the home on June 21, 1931. He was unmarried at that time, leaving surviving him two daughters, Vera Montgomery, then 31 years of age, the plaintiff herein, and another daughter born in 1909. He had been married twice, but had been divorced. His first wife, now Mrs. Chandler, is the mother of the plaintiff herein. Some time in the fall of 1930 he requested the insurance association to change the policies, making his daughter Vera the beneficiary thereof. Before that he had applied to the insurance association for loans to pay his assessments due under the policies. The application was granted and by reason thereof he owes the defendant the sum of $1683.28. It is agreed herein that this was properly deducted from the face amount of the policies. Only the remaining amount is in dispute. Plaintiff claims it as the beneficiary under the policies. The insurance association paid such remainder to the Brotherhood of Locomotive Engineers under a so-called assignment made and executed by the deceased on March 30, 1931, and reading as follows:

"March 30, 1931

To the Officers of the Locomotive Engineers Mutual Life & Accident Insurance Association:
Cleveland, Ohio.
Dear Sirs & Brothers:

This is to authorize the officers of the Locomotive Engineers Mutual Life & Accident Insurance Association to deduct whatever amount has been expended by the Brotherhood of Locomotive Engineers towards my maintenance in the Highland Park Home upon the maturing of my insurance certificates No. 82801-2 in favor of the Brotherhood of Locomotive Engineers.

This authority is given with the understanding that a reasonable amount will be left of my insurance to take care of my burial expenses, provided I leave no estate to take care of same.

Sincerely & fraternally,

(s) Don Montgomery
Member.

Witnesses:

John T. Farley
W. L. Mitchell."

This assignment was made in accordance with Section 42 of the by-laws of the insurance association, adopted some time in 1930, and which reads as follows:

"The Home of Aged and Disabled Railroad Employes of America.

Whereby members are permitted to enter the Home, or members now in the Home, who do not have a wife or dependent children, may give an assignment to the B. of L. E., authorizing the Insurance Association to reimburse the B. of L. E. the amount of their expenses in maintaining the members in the Home, from the proceeds of their Certificates."

The amount paid for keeping decedent in the Home was the sum of $1853.99, more than the balance due on the policies after reimbursing the defendant for the loans made to decedent and for paying his assessments. The decedent left no property of any kind, except the insurance policies herein.

1. It is claimed by counsel for the plaintiff that the so-called assignment hereinbefore mentioned was obtained under duress; but there is very little evidence in the record to sustain such contention. The main thing relied upon is that the decedent, at the time it was taken, was sick and not in a mental condition so as to be able to understand what he was doing. There is a letter in the record indicating that on December

8, 1930, the deceased was not in the best of health, having trouble with his throat. There is also a letter of June 15, 1931, indicating that the deceased had been failing for ten months previous to that time and that at the date of the letter he was in serious physical condition on account of a cancer developed near the groin and also an affection in his throat. What his mental condition was on March 30, 1931, when the so-called assignment was made, does not appear, but there is considerable evidence in the record relating to what was done. This evidence was given by H. J. Cassell, the general secretary and treasurer of the insurance association as well as of the B. of L. E. He testified that on the date above mentioned he met with all of the inmates of the Highland Park Home, called their attention to the amendment to the by-laws which permitted all members who had no wife or dependent children to make an assignment authorizing the insurance association to reimburse the B. of L. E. the amount of the expenses in maintaining the members in the Highland Park Home from the proceeds of the certificates held by them; that he talked with the members, explaining the situation for approximately thirty-five minutes and that thereupon all of them, (including the decedent), except three, agreed, and stated that it would be fair to make the assignment thus requested. Some of the other testimony in the case is as follows:

"Q. Did you talk to the decedent, Donald Montgomery, at the time he signed the assignment?

A. I did. I went around to every one individually before they signed, and I said: 'Now, you understand that this is not compulsory; that you are doing it of your own accord. * * *

Q. Did he have any dependent children? ·

A. None.

Q. I will ask you to state just what you said to these men with regard to the cost of their maintenance in the Home, and upon what basis you requested their signatures to this document, to this assignment?

A. I can't recall the exact words, but I remember distinctly of telling them that in no case where they had a wife or minor children would we require or ask them to give us an assignment.

Q. Did the insured, Montgomery, sign this assignment on that day?

A. He did. * * * *

Q. What is the fact, Mr. Cassell, as to whether any inmate of the Home was threatened with expulsion from the Home, or other threats, in the event he did not sign the assignment which was presented to him or them on March 30th, 1931?

A. There were no threats made."

Taking all the evidence into consideration, we are unable to say that the trial court was in error in finding that there was no duress used in this case to obtain the so-called assignment. Counsel for plaintiff calls attention to the further fact that after this assignment was made the policies issued to the decedent were sent by him to the plaintiff in this case, with the statement to keep them for future use. We do not, however, see anything inconsistent in this on the part of the decedent. He may have thought at that time that there would still be something left after paying the amounts mentioned in the assignment. Moreover, a reasonable amount of the money due on the policies was reserved to pay for funeral expenses. He may have thought that his daughter, apparently the main near relative then living, would pay these expenses and would then, pursuant to the reservation in the assignment, be entitled to reimbursement.

2.   Counsel for plaintiff contends that there was no consideration for the so-called assignment in question. It may be that that is true, although we need not decide the question. It is conceded that the assignment may be upheld as a gift, provided, of course, that the assignment is otherwise valid. Counsel for plaintiff contends it to be invalid upon the ground that there was no delivery either of the policy itself or of the assignment. Whether it is contended that the policy should have been delivered, in addition to the delivery of the assignment, is not altogether clear in counsel's brief. He apparently concedes that it was sufficient if there was a delivery of the assignment itself, for he states in one place in the brief that in order that a gift may be valid, there must be either a delivery of the subject matter, that is to say, the policies, or there must be a valid assignment. It is, in any event, held, and it appears to be the law, that if the assignment itself is delivered, delivery of the policy is not essential. Thus it is said in 12 R. C. L. 943:

"The surrender of the policy, however, is not essential when the donor has made a valid written assignment accepted by the assignee and recognized by the insurer."

In Couch, Cyc. of Ins. Law, vol. 6, p. 5228, it is said:

"In order to effect a valid assignment there must be either an actual or constructive delivery of the policy to the assignee, actual delivery of an assigned policy by the insured to the assignee not being essential to the validity of the assignment, since an actual bona fide assignment effects a constructive delivery, which is equal in insurance law to an actual manual delivery. * * * In other words, an assignment may be valid even though there is not actual delivery thereof (of the policy) to the assignee."

See further on this subject Arrinton v. Grand Lodge, (CCA) 21 F. (2d) 914; Kulp v. Marsh, 181 Pa. 627,

37 Atl. 913, 59 Am. St. Rep. 687; Penn Mutual Life Ins. Co. v. Forbes, 200 Ill. App. 441; Richardson v. White, 167 Mass. 58, 44 N. E. 1072; 2 Cooley, Briefs on the Law of Insurance, 1103; also vol. 6, p. 431; 37 C. J. 429, 430.

It is contended, however, by counsel for plaintiff that there was no actual delivery of the assignment, and hence it is invalid. He claims that the evidence merely shows that the so-called assignment was signed, but stops short of showing that it was delivered. It is true that it does not appear in so many words that the assignment was delivered. It may not be amiss to set out some of the testimony relating to the taking of the assignment:

"Q. I will ask you to state what, if anything, Donald Montgomery said to you and to the others present at the time he *made* the assignment" etc.

"Q. What, if anything, did the insured, Montgomery, say, if you recall, when you asked him whether or not he had any objection to signing?

A. I can't recall exactly what he said, but he stated, in very few words, he thought it was no more than fair and just that he should *give* the Association the assignment."

"Q. When you talked to these men about *getting* the assignments, did you talk to them individually or were they all together?

A. They were all together."

"Q. When the assignment was *made* in Illinois, were you present?

A. Yes."

"Q. Now when you were in Illinois at the Home *getting* these assignments, at that time was he receiving $30 a month.?

A. No."

It would seem that the words used as above mentioned indicate something more than that the assignment was merely signed. To *take* an assignment, or *make* it, or *give* it, or *get* it, would seem to imply that it was delivered, and we think that it was apparent from the record as a whole that counsel for both sides so treated it. In addition to that, it appears definitely that the defendant in this case had this so-called assign-. ment in its possession, within a comparatively short time after the death of the decedent, and it introduced it in evidence in the trial of this case. In view of this showing we think that we cannot hold that the assignment was not delivered.

3. The assignment, as may be noted, reserves a reasonable amount of money for burial expenses, unless the decedent left other property from which it might be paid. It is conceded that there was no other property, and it is agreed that whatever is due for the burial expenses is the sum of $150, which defendant, in fact, offered to pay, but which was not deposited in court. The evidence shows that the plaintiff and her mother each paid about one half. The insurance association was not authorized to pay the amount necessary for burial expenses to the assignee of the assignment, un- . less, perchance, the latter paid it. The defendant itself did not pay it, and it—the defendant—therefore still owes it to some one. Counsel for the defendant argue that this amount was not in issue in the case. Yet they were not sure of that in the trial below and offered to pay it. The reservation in the assignment is quite indefinite. It does not state who was to take care of the burial expenses, or to whom the amount thereof should be paid. The difficulty is to determine whether the amount of these expenses is due under the reservation in the assignment or under the policies. It would seem that whatever amount the insurance association still

owes, is necessarily due under the policies, and therefore would come within the issues of a suit seeking to recover the proceeds thereof. That defendant disbursed money under the assignment is a defensive matter herein. If, under such assignment, all of the amount due under the policies would prima facie be disbursed, a matter which is doubtful, but which we need not determine, then the subject of the burial expenses might become a matter of reply. And if in such case the allegations of the reply were not sufficient to entitle plaintiff to recover, that might in certain cases be fatal. But in this case, the evidence in regard to burial expenses was fully brought out, and mostly without objection on the part of counsel for the defendant. They objected only when most of the evidence in that connection was already in, the objection was not ruled on, and no exception was taken. Moreover, the objection was on the ground that the subject of burial expenses should be determined by a by-law of the B. of L. E., which in certain cases allows $150. We do not think that this by-law has anything to do with this case. The B. and L. E. is not a party herein. The question is whether or not the insurance association owes anything under the policies sued on. If the reply in this case is insufficient, then, in view of the circumstances herein, it may be regarded as amended to conform to the evidence.

And in any event, it could subserve no possible useful purpose to require another action to recover the sum of $150 paid out for burial expenses. Plaintiff's mother testified that she was willing to waive her part in favor of plaintiff. This, we think, may well be treated as equivalent to an assignment of her interest, if she has any, since, in view of such testimony she would be estopped to make any further claim therefor, if the amount is paid to her daughter. We think, accordingly,

that the judgment below should be modified by giving plaintiff judgment for the sum of $150. As so modified, it should be affirmed, the plaintiff to pay three fourths and the defendant one fourth of the expenses of this appeal, no costs, however, to be taxed for the briefs or the abstract of the record. It is so ordered.

*Modified and Affirmed.*

KIMBALL, Ch. J., and RINER, J., concur.

ON PETITION FOR REHEARING

BLUME, Justice.

A petition for a rehearing has been filed herein. Counsel for the plaintiff complains of the fact that we did not determine whether or not there was any consideration for the assignment made by the deceased during his life time for the reimbursement of his expenses in the Highland Park Home. That was, of course, not necessary, if the assignment can be. upheld as a gift. The trial court seemingly upheld it on that ground. And so did we. But counsel state that it was not pleaded in the answer that it was a gift; that the case was not tried on the theory that it was, and that it therefore cannot be sustained as such.

The defendant pleaded that the deceased, in order to secure the B. of L. E. for the moneys expended by it for his support and maintenance (in the sum of $1853.99), made, executed and delivered to it a written assignment of all moneys due or to become due under the terms and conditions of his membership certificates, and that the B. of L. E. accepted the assignment. These are all ultimate facts. The by-law relating thereto, number 41, by which a member of the defendant association was permitted to make and deliver such

assignment was admitted in evidence without objection. That is true also with all the circumstances surrounding the transaction, and which we held support the finding that the assignment was freely and voluntarily made. And if it was so made, and the deceased understood the purport of it, of which there is evidence, then, whether or not it required a consideration would seem to be merely a question of law. Under a pleading like that in the case at bar, the ultimate thing to be determined is the validity of the assignment. It may be valid or invalid for several *reasons*. Presence or absence of consideration may be one. But if the court finds, or the record shows, that under the evidence presented an allegation that the assignment is without consideration is immaterial for the reason that under the circumstances none is required, it would seem to be strange that notwithstanding that fact the court is bound to hold that the immaterial is material. We have found no case dealing with this exact situation (see, however, McNevins v. Prudential Life Ins. Co., 57 Misc. Rep. 608, 108 N. Y. S. 745), and counsel have cited us to none, but it would seem to be apparent that there is something wrong in counsel's reasoning. The rule that a case is ordinarily decided according to the theory on which it is tried has its exceptions. 4 C. J. 662. This case would seem to present one of them. It does not sound convincing that a trial court or this court should be bound to decide a case upon the legal principle which counsel may think applies in a case. See 3 C. J. 741. And that seems to be the situation here. But if we are wrong in this, we ought, we think, under circumstances like those presented here, consider, if necessary, the answer amended so as to conform to the proof. We cannot, accordingly, uphold counsel's contention.

Counsel have cited us to a letter written to the plaintiff on October 11, 1930, in which Jas. H. Cassell stated this:

"We are writing your father trying to induce him to be contented and stay in the home. If he leaves the Home, the only amount we would be willing to let him have under our laws would be $40 per month and he cannot live on that amount."

Evidently the deceased desired, about the time that the letter was written, to leave the Home. Counsel builds an argument around that point, and claims that because of that fact, and in view of the letter above mentioned, the "plaintiff is entitled to credit on said alleged indebtedness in the sum of $40 per month, for the 28 months that Mr. Montgomery was in the home, or the sum of $1120.00." We have attempted to fathom the reasons for such contention. We have not been able to see the force of it. The deceased never left the home. He could not, accordingly, be entitled to the $40 per month, if that amount was allowable, as the foregoing indicates, only when he was not in it.

The other points argued by counsel relate to the delivery of the assignment and to the question of duress. We discussed these points sufficiently in the original opinion, and still think that they were correctly decided. In the opinion of the writer, Mr. Cassell was too zealous in the interest of the association which he represents, and he ought not to have asked the deceased for the assignment. But that does not present a legal ground for holding it invalid. The petition for hehearing is denied.

*Rehearing Denied.*

KIMBALL, Ch. J., and RINER, J., concur.