# IN THE SUPREME COURT, STATE OF WYOMING

## 2014 WY 135

OCTOBER TERM, A.D. 2014

*October 30, 2014*

KENNETH DALE NICODEMUS,

**Appellant**
**(Plaintiff),**

**v.**

ROBERT LAMPERT, Director,
Wyoming Department of Corrections;
EDDIE WILSON, Warden, Wyoming
State Penitentiary; and DOTTI
WIXSON,

**Appellees**
**(Defendants).**

S-14-0071

*Appeal from the District Court of Carbon County*
*The Honorable Wade E. Waldrip, Judge*

*Representing Appellant:*
    *Pro se*

*Representing Appellees:*
    Peter K. Michael, Wyoming Attorney General; David L. Delicath, Deputy
    Attorney General; James Michael Causey, Senior Assistant Attorney General;
    Susan G. O'Brien, Senior Assistant Attorney General

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, **Justice**.

[¶1]     Inmate Kenneth Nicodemus appeals from the denial of a Wyoming Rule of Civil Procedure 60(b) motion for relief from a district court order that dismissed a civil suit against three employees of the Wyoming Department of Corrections (DOC).  We affirm.

## ISSUES

[¶2]     Nicodemus raises two issues, which we restate as follows:

         1.  Did the district court abuse its discretion by ignoring *Bear Cloud v. State,* 2013 WY 18, 294 P.3d 36 (Wyo. 2013) (*Bear Cloud II*), when it denied his Rule 60(b) motion?

         2.  Did his failure to receive the defendants' response to his motion deprive him of due process?

## FACTS

[¶3]     In 1992, Nicodemus pled guilty to two counts of first-degree murder and one count of felony larceny, for which he was sentenced to two consecutive life sentences and a sentence of eight to ten years to be served consecutively to the life sentences. Approximately five years later, while serving the first life sentence, he attempted to escape from the Wyoming State Penitentiary.  A conviction for that offense netted Nicodemus an additional sentence of two to four years, to be served concurrently with his first life sentence.[1]

[¶4]     In 2010, the legislature amended Wyo. Stat. Ann. § 7-16-205(a) by creating a new paragraph (i) dealing with withholding from a prisoner's earnings:

> Unless the prisoner is serving a sentence of death or life without the possibility of parole or is subject to mandatory savings under W.S. 25-13-107(b)(i), ten percent (10%) shall be credited to the prisoner's personal savings account within the correctional facility's trust and agency account, until the prisoner's account has a balance of one thousand dollars ($1,000.00).  Once the prisoner's personal savings account balance reaches one thousand dollars ($1,000.00), the income otherwise distributed to the prisoner's savings account under this paragraph shall be

---

[1] As Nicodemus points out, an attempt to escape makes an inmate ineligible for parole on the offense he was serving at the time of the attempt.  Wyo. Stat. Ann. § 7-13-402(b)(ii) (LexisNexis 2013).  The statute has no impact on this case.

1

distributed to the prisoner as provided by paragraphs (ii) through (vi) of this subsection. Funds in the prisoner's personal savings account shall be paid to the prisoner upon parole or final discharge[.]

2010 Wyo. Sess. Laws, ch. 43, § 1. The statute prevents a prisoner from using the first $1,000 he earns for prison labor until he is paroled or released, when it is paid to him. Appellant asserts that the purpose of this statute is to assure that an inmate who has been paroled or finally discharged from his sentence has funds to pay expenses until he can find employment or another source of legitimate revenue so that he is not tempted or forced to steal or commit other crimes to keep body and soul together. He does not expect to ever be paroled or released, and he anticipates that he will die in prison. However, when the amendment went into effect in July of 2010, the DOC began withholding ten percent of Nicodemus' monthly earnings from penitentiary labor and crediting that amount to his mandatory savings account.

[¶5] On October 20, 2011, Nicodemus filed a 42 U.S.C. § 1983 civil rights action in the district court for Carbon County. He asserted that Appellees violated his federal constitutional right to due process by placing his earnings in the mandatory savings account, from which he could not withdraw them without a hearing. He contended that Appellees lacked statutory authority to withhold his property from him because he was serving a sentence of life imprisonment without the possibility of parole, and that he therefore belonged to a class of inmates which the newly amended § 7-16-205 expressly excluded from its income-withholding provisions.

[¶6] The defendants moved to dismiss the original and an amended complaint. The district court granted the motion on March 14, 2012.[2] The court concluded that the legislature's use of the phrase "life without the possibility of parole" in § 7-16-205(a)(i) had to be viewed in light of other statutory provisions relating to that subject, particularly § 6-10-301(c). In 2010, that subsection read as it had when it was enacted in 1996:[3]

A sentence specifically designated as a sentence of life imprisonment without parole is not subject to commutation by the governor. A sentence of life or life imprisonment which is not specifically designated as a sentence of life imprisonment without parole is subject to commutation by the governor. A person sentenced to life or life imprisonment is not eligible for parole unless the governor has commuted the person's sentence to a term of years.

---

[2] Neither the defendants' motions nor a transcript of the motion hearing were included in the record on appeal.

[3] Subsection (c) was amended in 2013, but those amendments have no effect on this appeal.

1996 Wyo. Sess. Laws, ch. 73, § 1.

[¶7]   The district court noted that Nicodemus' life sentences were not designated as sentences of "life without parole," and that the governor could therefore commute them to terms of years. Citing to *Bear Cloud v. State*, 2012 WY 16, 275 P.3d 377 (Wyo. 2012) (*Bear Cloud I*), the court concluded that, although commutation and subsequent parole from such sentences are rare, parole was nevertheless possible. It held that Nicodemus was not therefore serving a sentence of life without the possibility of parole, and that § 7-16-205 therefore empowered—and in fact required—the DOC to place a portion of his inmate income in his savings account until the balance reached $1,000.00, and to deny him the right to withdraw those funds from the account.

[¶8]   Nicodemus did not appeal the order dismissing his case. Instead, nearly a year later, he filed a motion for relief from the order of dismissal under W.R.C.P. 60(b)(5) and (6). He claimed that the ruling was incorrect because it was based on this Court's decision in *Bear Cloud I*, which had since been vacated by the United States Supreme Court and then supplanted by our decision in *Bear Cloud II*.[4] He relied upon language indicating that, for purposes of sentencing juveniles, a sentence to life as a matter of law allows no realistic possibility of parole because it depends upon executive clemency. *Bear Cloud II*, ¶ 36, 294 P.3d at 45-46.

[¶9]   In late April of 2013, the district court denied Nicodemus' Rule 60(b) motion. The court observed that its earlier order of dismissal rested on the distinction in § 6-10-301(c) between life sentences which were and were not specifically designated as confining a prisoner to life without parole, and on its conclusion that the plain language of § 7-16-205(a)(i) must be said to have incorporated that distinction. The court also noted that it referred to *Bear Cloud I* in its order only to further explain the statutory nature of any life sentence that was not expressly designated by a sentencing court as being "life without parole," and that consequently its explanation—and *Bear Cloud I* generally—were not the basis for its decision to dismiss Nicodemus' suit.

[¶10]  Nicodemus timely appealed the denial of his Rule 60(b) motion.

### DISCUSSION

**The Ruling on the W.R.C.P. 60(b) Motion**

---

[4] The Supreme Court remanded the case to us for reconsideration in light of its intervening decision in *Miller v. Alabama*, ___ U.S. ___, 132 S.Ct. 2455, 183 L.Ed.2d 407 (2012), relating to the imposition of life without parole sentences on juveniles. *Bear Cloud v. Wyoming*, ___ U.S. ___, 133 S.Ct. 183, 184 L.Ed.2d 5 (2012) (mem.).

[¶11] This Court reviews decisions disposing of Rule 60(b) motions for an abuse of discretion. We must determine whether the trial court's decision was reasonable when the record is viewed in the light most favorable to that decision and to the prevailing party. We will reverse an order denying a Rule 60(b) motion only if the movant establishes that the trial court was clearly wrong. *Campbell v. Hein*, 2013 WY 131, ¶¶ 8-9, 311 P.3d 165, 167 (Wyo. 2013); *Barron v. Barron*, 834 P.2d 685, 687 (Wyo. 1992).

[¶12] Nicodemus argues that the district court abused its discretion by failing to recognize the significance of our *Bear Cloud II* decision to the question posed by his civil rights complaint – *i.e.*, the meaning of the legislature's choice of the phrase "life without the possibility of parole" in Wyo. Stat. Ann. § 7-16-205(a)(i). Because the district court clarified that its ruling did not rely upon the two *Bear Cloud* decisions, we will first examine its interpretation of that language.

[¶13] Statutory construction presents a question of law that we examine *de novo*. In interpreting statutes, our primary goal is to determine the legislature's intent. We therefore construe each statutory provision *in pari materia*, giving effect to every word, clause, and sentence according to their arrangement and connection. To ascertain the meaning of a given law, we also consider all statutes relating to the same subject or having the same general purpose and strive to interpret them harmoniously. We presume that the legislature has acted in a thoughtful and rational manner with full knowledge of existing law, and that it intended new statutory provisions to be read in harmony with existing law and as part of an overall and uniform system of jurisprudence. When the words used convey a specific and obvious meaning, we need not go farther and engage in statutory construction. *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶¶ 36-37, 319 P.3d 116, 125-26 (Wyo. 2014) (citing *Rock v. Lankford*, 2013 WY 61, ¶ 19, 301 P.3d 1075, 1080-81 (Wyo. 2013); *Redco Const. v. Profile Props., LLC*, 2012 WY 24, ¶¶ 26, 37, 271 P.3d 408, 415-16, 418 (Wyo. 2012)).

[¶14] Until 1996, the only sort of determinate[5] life sentence available in Wyoming was that characterized in Wyo. Stat. Ann. § 6-2-101(b) as "life imprisonment according to law." *See Sincock v. State*, 2003 WY 115, ¶ 12, 76 P.3d 323, 330 (Wyo. 2003); *Schultz v. State*, 751 P.2d 367, 368 n.1 (Wyo. 1988). An inmate serving such a sentence could not be paroled under Wyo. Stat. Ann. § 7-13-402(a) (Michie 1995), which provided that the state board of parole was empowered to "grant a parole to any person imprisoned . . . under sentence, except a life sentence." *Olsen v. State*, 2003 WY 46, ¶ 190, 67 P.3d 536, 603 (Wyo. 2003). However, an inmate could be paroled or released if the Governor commuted his life sentence to a term of years. *Weldon v. State,* 800 P.2d 513, 514 (Wyo. 1990).

---

[5] This is to be distinguished from an indeterminate sentence having a minimum term of a specified number of years and a maximum term which expires at the end of an inmate's life. *See generally* Wyo. Stat. Ann. § 7-13-201 (LexisNexis 2013).

4

[¶15] In 1994, the Wyoming Constitution was amended to add Art. 3, § 53, which empowered the legislature to create a penalty of "life imprisonment without parole" that would not be subject to commutation. Two years later, the legislature enacted a statute which permitted a sentence of "life imprisonment without parole" for specific crimes to be designated by statute. 1996 Wyo. Sess. Laws, ch. 73, § 1; Wyo. Stat. Ann. § 6-10-301(a) (Michie 1997).

[¶16] Section Two of the law amended Wyo. Stat. Ann. § 7-13-402(a) to provide that the parole board could grant parole on any sentence except "a sentence of life imprisonment without parole or a life sentence." Section Two of the 1996 act also added the new form of life sentence to the penalties available under Wyo. Stat. Ann. § 6-2-306 for offenders repeatedly convicted of sexual assault. 1996 Wyo. Sess. Laws, ch. 73, § 2. Five years after passage of the 1996 act, the legislature amended the first-degree murder statute, Wyo. Stat. Ann. § 6-2-101, to add life without parole to the existing sentencing options of death and life according to law. 2001 Wyo. Sess. Laws, ch. 96, § 2.

[¶17] When the language of § 6-10-301 is viewed in light of other legislation passed since it was enacted, it is evident that the legislature created a term of art[6] by appending the words "without parole" to the words "life sentence." By themselves, the latter refer to a sentence from which parole is available only in those relatively rare cases in which the Governor has exercised clemency and commuted the sentence to a term of years. This type of sentence is also known by the statutory term "life according to law" and, more colloquially, as a "straight life" sentence. However, if a judge or the legislature specifically designates a life sentence as one "without parole" or "without the possibility of parole," there can be no commutation and therefore no parole under any circumstances.

[¶18] That was the state of affairs in 2010, when the legislature created § 7-16-205(a)(i) by enacting 2010 Wyo. Sess. Laws, ch. 43, § 1. As noted above, paragraph (a)(i) mandates that ten percent of an inmate's earnings from prison labor be credited to his personal savings account until it attains a balance of one thousand dollars. Those funds are to be paid to the inmate upon parole or final discharge of his sentence. Of key significance to Nicodemus' case, the legislature created an exemption for inmates under a death sentence or a sentence of "life without the possibility of parole."

[¶19] Relying on § 6-10-301(b), the district court concluded that Nicodemus' life sentence did not fall within that exemption because it was not specifically designated as a sentence of life without parole, and that was the type of life sentence addressed in the

---

[6] Words or terms of art are those that have a "specific, precise meaning in given specialty, apart from its general meaning in ordinary contexts." Black's Law Dictionary 1700 (10th ed. 2014).

5

exemption.[7]  That view is consistent with our discussion above.  Consequently, if the question was before us, we would conclude that the district court properly disposed of Nicodemus' civil rights lawsuit.  We recognize that Nicodemus and others similarly situated have little hope of ever leaving the prison system, but we are compelled to conclude, based on the language of the statute, that the legislature intended for the Department of Corrections to maintain a fund for that remote contingency.

[¶20]  What is before us, given Nicodemus's Rule 60(b) motion, is whether our *Bear Cloud* decisions have any bearing on what the legislature meant by its use of the term "life without the possibility of parole" in § 7-16-205(a)(i).  That statutory provision was enacted in 2010 while Bear Cloud's criminal prosecution was still in its pretrial stage.  *See Bear Cloud I*, ¶¶ 10-12, 275 P.3d at 384.  We fail to see how our two appellate decisions in 2012 and 2013 could have affected legislative decisions made more than two years earlier.  More importantly, the portions of the *Bear Cloud* decisions on which Nicodemus relies were not concerned with the distinctions between a "life sentence" and a "sentence of life without the possibility of parole" and the legislature's use of those terms of art.

[¶21]  Instead, those two decisions and the United States Supreme Court decision in *Miller* which prompted the second decision dealt with the practical effect of what is known in Wyoming as a life sentence, or life as a matter of law.  As noted above, parole from such a sentence is only available in those relatively rare cases where the sentence is commuted to a term of years.  At the risk of oversimplification, the *Bear Cloud* and *Miller* opinions concerned whether the possibility of parole presented by such a sentence was sufficiently realistic and meaningful to meet constitutional strictures on the sentencing of juveniles who have committed homicide offenses.  *See Bear Cloud I*, ¶¶ 75-77, 275 P.3d at 407-09; *Bear Cloud II*, ¶¶ 33-38, 294 P.3d at 45-46.  That question is altogether different than the question posed by Nicodemus' civil suit.

[¶22]  For that reason, we conclude that the district court correctly applied the law and did not abuse its discretion in denying Nicodemus' Rule 60(b) motion.

**The Failure to Receive and Inability to Reply to the Defendants' Response to the Rule 60(b) Motion**

---

[7] Nicodemus suggests this reading of the statute is faulty because, even though one may be serving a straight life sentence, he likely will be unable to reap the benefit of the money credited to his savings account.  In effect, he suggests the legislature could not have intended such a futile act.  However, that position ignores the prospect that such an account may provide an added incentive for an inmate to conduct himself to show he is worthy of commutation.

[¶23] Nicodemus argues he was denied due process when, due to his failure to receive the defendants' response to his motion,[8] he was unable to reply to that pleading.[9] That argument is based upon W.R.C.P. 6(c)(1), which allows a moving party to reply to a response to his motion. However, a party who claims that his right to due process has been infringed must show that a deviation from procedural rules affected protected interests in an impermissible way—*i.e.*, that he was denied fundamental fairness. *Brush v. Davis*, 2013 WY 161, ¶ 16, 315 P.3d 648, 653 (Wyo. 2013).

[¶24] Nicodemus has not told us what he might have said in a reply which might have affected the outcome, and his discussion of the propriety of that dismissal in this appeal deviates little from the discussion contained in the memorandum he presented to the trial court. Although his appellate brief formatted his argument differently, Nicodemus did not supplement or alter his argument in any significant way. We cannot therefore say that the failure to receive the defendants' response to the motion and resulting inability to file a reply brief compromised Nicodemus' ability to argue his position in an impermissible or fundamentally unfair way. Consequently, we reject his claim that he was deprived of due process.

## CONCLUSION

[¶25] The district court did not abuse its discretion when it denied Nicodemus' W.R.C.P. 60(b) motion, and he has failed to show that his failure to receive the response to that motion deprived him of due process. We therefore affirm the district court's denial of his motion.

---

[8] The response was filed March 20, 2013, and served by mail using Nicodemus' state penitentiary address in Rawlins, even though he had mailed his motion from the medium security facility in Torrington to which he had been transferred. He asserts he knew nothing about the response until reading the order denying his motion which was filed on April 25, 2013, and that neither of the correctional facilities had any record of receiving the response.

[9] In the course of presenting that argument, he also asserts that his failure to receive that document deprived the district court of the authority to consider the defendants' response and suggests that such a lack of authority be deemed a jurisdictional defect. No authority was provided for either proposition. Accordingly, we will not consider them. *Serna v. State*, 2013 WY 87, ¶ 7, 305 P.3d 1142, 1143 (Wyo. 2013).