# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 65

### APRIL TERM, A.D. 2021

*May 10, 2021*

SINCLAIR WYOMING REFINING
COMPANY,

Appellant
(Plaintiff),

v.

S-20-0114

INFRASSURE, LTD,

Appellee
(Defendant).

*W.R.A.P. 11 Certification*
*United States Court of Appeals for the Tenth Circuit*
*The Honorable Timothy M. Tymkovich, Chief Judge*

*Representing Appellant:*
> Jeffrey S. Pope and JoAnna S. DeWald\* of Holland & Hart LLP, Cheyenne, Wyoming; Marc James Ayers of Bradley Arant Boult Cummings LLP, Birmingham, Alabama. Argument by Mr. Ayers.

*Representing Appellee:*
> Jane M. Byrne, Guyon H. Knight, and Paul W. Hughes of McDermott Will & Emery LLP, New York, New York, and Washington, D.C.; Gregory C. Dykeman and Randall B. Reed of Long Reimer Winegar LLP, Cheyenne, Wyoming. Argument by Mr. Knight.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, JJ., and ROBINSON, D.J.*

*\* Order Allowing Withdrawal of Counsel entered October 21, 2020.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**ROBINSON**, **District Judge**.

[¶1]   The United States Court of Appeals for the Tenth Circuit certified to this Court a question asking whether an insurance policy is "issued for delivery" or "delivered" under Wyo. Stat. Ann. § 26-15-101(a)(ii) even if no copy was ever conveyed to Wyoming and the policy lists only an out-of-state address for the insured.  This Court accepted the certified question pursuant to Rule 11 of the Wyoming Rules of Appellate Procedure.  We answer the certified question in the affirmative.

## CERTIFIED QUESTION

[¶2]        Whether, under Wyo. Stat. Ann. § 26-15-101(a)(ii), an insurance policy is "issued for delivery" or "delivered" in Wyoming where a Wyoming corporation is a named insured, the policy covers risks in Wyoming, and the policy provides that coverage shall apply "in the same manner and to the same extent" as if the policy had been issued to the Wyoming corporation, but no copy was ever conveyed to Wyoming and the policy only lists an out-of-state address for the insured?

## FACTS

[¶3]   In 2012, The Sinclair Companies, a parent company to Sinclair Wyoming Refining Company (Sinclair), entered into an "All Risks of Direct Physical Loss or Damage, Including Business Interruption" insurance policy (The Policy) through the London market covering risk for the calendar year 2013.[1]  The Sinclair Companies was listed as the "First Named Insured," and had the sole authority under The Policy to, among other things, negotiate the terms of the policy and of the premiums payments and "to act on behalf of all insureds with respect to the negotiation and settlement of claims."  The Policy covered all-inclusive risks to "property located anywhere in the world."  Losses covered included those from flood, fire, earth movement, pollution clean-up, and covered losses to real and personal property, business interruption, royalties, and various other types.  Sinclair and multiple other subsidiaries were listed separately as named insureds with policy coverage issued to each.  Eighteen different insurance companies provided coverage for a percentage of any loss suffered by Sinclair and its subsidiaries.  Infrassure, LTD (Infrassure), a Swiss company, was one of the eighteen insurers that provided coverage under The Policy and was severally liable for seven and one-half percent (7.5%) of any covered loss.

---

[1] The Policy was one commonly referred to as a Lloyd's or Lloyd's of London insurance policy.  *Corfield v. Dallas Glen Hills LP*, 355 F.3d 853, 857-58 (5th Cir. 2003).

1

[¶4]    Both Sinclair and The Sinclair Companies are Wyoming corporations.  The Policy lists only one address for the "FIRST NAMED INSURED AND OTHER NAMED INSUREDS" :

> The Sinclair Companies
> c/o Risk Manager
> 550 East South Temple
> Salt Lake City, Utah  84102

[¶5]    It is not known whether the original or any copies of The Policy were physically or electronically delivered, and if so, to what address delivery was made.  The certified question does state, and our answer presumes, no delivery, physically or electronically, was made to Wyoming.

[¶6]    Paragraph 53 of The Policy includes a "<u>MULTIPLE INSUREDS' CLAUSE</u>":

> It is noted and agreed that, if the Insured comprises more than one insured party each operating as a separate and distinct entity then, (save as described in this Multiple Insureds' Clause), cover[age] hereunder shall apply in the same manner, and to the same extent, as if individual policies had been issued to each such insured party, provided that the total liability of the Insurers to all of the insured parties collectively shall not exceed the Policy Limit of Liability, including any Aggregate Limits of Liability and Limits of Liability.

[¶7]    In 2013, the Sinclair Wyoming petroleum refinery located in Sinclair, Wyoming suffered a fire and explosion. After extended negotiations spanning twenty months, all insurers except Infrassure settled with Sinclair based on a negotiated payment resolution. Infrassure did not settle because it disagreed with how business interruption losses were calculated.

[¶8]    Sinclair filed suit against Infrassure in the United States District Court for the District of Wyoming.  One of Sinclair's claims was for attorney fees pursuant to Wyo. Stat. Ann. § 26-15-124(c) (LexisNexis 2019):

> In any actions or proceedings commenced against any insurance company on any insurance policy or certificate of any type or kind of insurance, or in any case where an insurer is obligated by a liability insurance policy to defend any suit or claim or pay any judgment on behalf of a named insured, if it is determined that the company refuses to pay the full amount of a loss covered by the policy and that the refusal is

2

unreasonable or without cause, any court in which judgment is rendered for a claimant may also award a reasonable sum as an attorney's fee and interest at ten percent (10%) per year.

[¶9]    Infrassure sought dismissal of this claim under Federal Rule of Civil Procedure 12(b)(6), arguing Sinclair could not obtain relief under Wyo. Stat. Ann. § 26-15-124(c) because The Policy was not "issued for delivery" or "delivered" in Wyoming, a requirement of Wyo. Stat. Ann. § 26-15-101(a)(ii) for Wyoming's insurance code to be applicable. The federal district court agreed and dismissed the claim. Sinclair appealed to the Tenth Circuit and that court certified the question given above to this Court as an undecided matter of state law.

## *STANDARD OF REVIEW*

[¶10] Certified questions are governed by W.R.A.P. 11. When there is no controlling precedent to a question of law, Rule 11.01 allows this Court to answer pure questions of law "'which may be determinative of the cause' pending in the certifying court." *Preston v. Marathon Oil Co.*, 2012 WY 66, ¶ 4, 277 P.3d 81, 83 (Wyo. 2012). The role of this Court in answering a certified question does not include fact finding. *B & W Glass, Inc. v. Weather Shield Mfg., Inc.*, 829 P.2d 809, 812 (Wyo. 1992). Certainty of facts is not required to answer a pure question of law. *Id*. The certified question presently before the Court is an issue of statutory interpretation. Questions of statutory interpretation are subject to a *de novo* review. *Phoenix Vintners, LLC v. Noble*, 2018 WY 87, ¶ 10, 423 P.3d 309, 312 (Wyo. 2018) (citing *Brock v. State ex. Rel. Wyoming Workforce Servs., Unemployment Ins. Div.*, 2017 WY 47, ¶ 7, 394 P.3d 460, 462 (Wyo. 2017)).

## *DISCUSSION*

[¶11]  This Court has not addressed whether an insurance contract is "delivered" or "issued for delivery" if actual delivery of the contract does not occur in Wyoming. The applicable statute is Wyo. Stat. Ann. § 26-15-101 (LexisNexis 2019):

> (a) This chapter applies to all insurance contracts and annuity contracts except:
>
> (i) Reinsurance;
>
> (ii) Policies or contracts not issued for delivery in this state nor delivered in this state;
>
> (iii) Wet marine and transportation insurance.

3

[¶12]   The primary objective in statutory interpretation "is to give effect to the legislature's intent." *Cheyenne Newspapers, Inc. v. Bd. of Trustees of Laramie Cnty. Sch. Dist. No. One*, 2016 WY 113, ¶ 10, 384 P.3d 679, 682 (Wyo. 2016) (quoting *Nicodemus v. Lampert*, 2014 WY 135 ¶ 13, 336 P.3d 671, 674 (Wyo. 2014)).  This Court's longstanding method of statutory interpretation begins by first determining if the statute in question is "clear and unambiguous" or "ambiguous or subject to varying interpretations." *Ultra Resources, Inc. v. Hartman*, 2010 WY 36, ¶ 69, 226 P.3d 889, 916 (Wyo. 2010).  "Clear and unambiguous" language is wording "reasonable persons" would agree as to its meaning. *Id.*; *Parker Land and Cattle Co. v. Wyoming Game and Fish Comm'n*, 845 P.2d 1040, 1043 (Wyo. 1993) (citations omitted).  When a statute is clear and unambiguous, the statute's plain language is given effect. *Ultra Resources,* ¶ 69, 226 P.3d at 916; *Parker Land*, 845 P.2d at 1043 (citations omitted).  Reliance on dictionary definitions to explain "plain and ordinary" language often results. *Belle Fourche Pipeline Co. v. State*, 766 P.2d 537, 542 (Wyo. 1988).  Yet when a statute includes words or phrases that are technical or "terms of art," such language is given its technical meaning unless a different intent is expressed by the legislature. *Powder River Coal Co. v. Wyoming Dep't of Revenue*, 2006 WY 137, ¶ 16, 145 P.3d 442, 448 (Wyo. 2006). *See also Huffman v. Caterpillar Tractor Co.*, 908 F.2d 1470, 1476 (10th Cir. 1990).

[¶13]   Determining whether a statute is unambiguous or ambiguous is a matter of law. *Taylor v. State ex rel. Wyoming Workers' Safety and Comp. Div.*, 2003 WY 83, ¶ 10, 72 P.3d 799, 802 (Wyo. 2003).

> When the words used are clear and unambiguous, a court risks an impermissible substitution of its own views, or those of others, for the intent of the legislature if any effort is made to interpret or construe statutes on any basis other than the language invoked by the legislature. . . . If the language selected by the legislature is sufficiently definitive, that language establishes the rule of law. . . . This inhibition upon statutory construction offers assurance that the legislative efforts and determinations of elected representatives will be made effective without judicial adjustment or gloss.

*Id.* (quoting *State ex rel. Dept. of Revenue v. Buggy Bath Unlimited, Inc.*, 2001 WY 27, ¶ 16, 18 P.3d 1182, 1187 (Wyo. 2001) (quoting *Allied-Signal, Inc. v. Wyoming State Bd. of Equalization*, 813 P.2d 214, 219 (Wyo. 1991)).

[¶14]   A statute is to "be construed as a whole" to ascertain its purpose and intent, as well as to determine "the meaning of each part." *Parker Land*, 845 P.2d at 1042 (quoting *Ross v. Trustees of University of Wyoming*, 31 Wyo. 464, 489, 228 P. 642, 651 (1924); *accord, City of Laramie v. Facer*, 814 P.2d 268, 270 (Wyo. 1991).  Each "word, clause and sentence" is given effect, and all components of the statute are construed "*in pari materia*."

4

*Parker Land*, 845 P.3d at 1042 (quoting *Facer*, 814 P.2d at 270); *accord*, *State ex rel. Albany Cnty. Weed & Pest Dist. v. Bd. of Cnty. Comm'rs of Albany Cnty.*, 592 P.2d 1154, 1157 (Wyo. 1979). "[S]tatutes should be considered *in pari materia* as part of the process of determining whether they are ambiguous, and not just as part of the process of determining their meaning once they have been found to be ambiguous." *Mountain Cement Co. v. South of Laramie Water & Sewer Dist.*, 2011 WY 81, ¶ 40, 255 P.3d 881, 896 (Wyo. 2011). A statute is ambiguous only when "it is vague or uncertain and subject to varying interpretations," or if a certain meaning would be inconsistent with other statutes or other portions of the same statute, taken *in pari materia*. *Id.* ¶ 40, 255 P.3d at 897.

[¶15] The words "delivered" or "issued for delivery" are repeated in the Wyoming Insurance Code numerous times, but the Wyoming State Legislature has not defined the terms. Both parties assert § 26-15-101(a)(ii) is clear and unambiguous yet differ as to the "plain meaning" of the language. Sinclair argues "delivery" requirements are "broad, flexible terms of art in the insurance industry," and a policy is "delivered" or "issued for delivery" in Wyoming if the policy issued insures risks in Wyoming, and the insured are actually in Wyoming. Infrassure argues "delivery" and "issued for delivery" should be given a strict interpretation, requiring delivery to a location in Wyoming. "[D]ivergent opinions among parties as to the meaning of a statute may be evidence of ambiguity but is not conclusive. Ultimately, whether a statute is ambiguous is a matter of law to be determined by the court." *Wyoming Med. Center, Inc. v. Wyoming Ins. Guar. Ass'n,* 2010 WY 21, ¶ 19, 225 P.3d 1061, 1066 (Wyo. 2010) (quoting *Kennedy Oil v. Dep't of Revenue,* 2008 WY 154, ¶ 10, 205 P.3d 999, 1003 (Wyo. 2008)).

[¶16] We conclude the statute clearly and unambiguously provides that an insurance contract is issued for delivery in Wyoming if the policy issued is intended to protect an insured in Wyoming against risks in Wyoming. The plain meaning of the terms "delivery" and "issue," as well as the overall purpose of the Wyoming Insurance Code, support this meaning.

[¶17] Statutory analysis begins with the plain meaning of the terms. Black's Law Dictionary (11th ed. 2019) defines delivery as "[t]he formal act of voluntarily transferring something." In the context of insurance law, it is commonly accepted that the word "delivered" or "delivery" is to be "understood flexibly" and does not require physical delivery of the insurance policy. *Jorgenson Forge Corp. v. Illinois Union Ins. Co.*, No. 2:13-CV-01458-BJR, 2014 WL 12103362, *3 (W.D. Wash. June 17, 2014) (citing *Frye v. Prudential Ins. Co. of America*, 288 P. 262, 263 (Wash. 1930)). Instead, delivery of an insurance policy may be made by actual or constructive delivery of the policy. This Court recognized constructive delivery of an insurance policy many years ago, related to an assignment of a life insurance policy:

> In Couch, Cyc. of Ins. Law, vol. 6, p. 5228, it is said: "In order
> to effect a valid assignment there must be either an actual

5

> or constructive delivery of the policy to the assignee, actual delivery of an assigned policy by the insured to the assignee not being essential to the validity of the assignment, since an actual bona fide assignment effects a constructive delivery, which is equal in insurance law to an actual manual delivery. . . . In other words, an assignment may be valid even though there is no actual delivery thereof (of the policy) to the assignee."

*Montgomery v. Locomotive Engineers' Mut. Life & Accident Ins. Ass'n.*, 47 Wyo. 86, 31 P.2d 71, 73 (1934). *See also Wanshura v. State Farm Life Ins.*, 275 N.W.2d 559, 564 (Minn. 1978) ("In general, constructive delivery, by the insurer, exists when the insurance company has manifested its assent to be bound finally on the policy.").

[¶18]   There is much emphasis placed on whether The Policy was constructively delivered to Sinclair, as opposed to whether The Policy was delivered or issued for delivery in Wyoming.  There is no doubt from the certified question posed to this Court, and this Court accepts as true, that either actual or constructive delivery of The Policy was made to Sinclair.  This does not answer the question.  The decisive question before the Court is whether The Policy was delivered or issued for delivery in Wyoming.

[¶19]   Webster's Dictionary states "issue" means "to send out; to put into circulation; as to *issue* money from a treasury or notes from a bank[;] [t]o send out, to deliver from authority; as to *issue* and order from the department of war; to *issue* a writ[;] [or t]o deliver for use; as to *issue* provisions from a store. *Issue,* Webster's Twentieth-Century Dictionary Unabridged (1938).  Black's Law Dictionary defines "issue" in relevant part as: "[t]o put forth officially[.]" *Issue,* Black's Law Dictionary (11th ed. 2019).  In considering the definitions of "delivery" and "issue," the legislature intended for Chapter 15, including the attorney fee shifting provision in § 26-15-124, to apply to insurance policies transferred or put forth officially to Wyoming insureds for use in Wyoming.

[¶20]   This interpretation serves the longstanding purpose of the Wyoming Insurance Code.  In 1943, this Court discussed the public interest and policy behind insurance law:

> [I]t must be constantly kept in mind that "it is now generally recognized that the business of insurance is one that is affected with a public interest, and that it is a proper subject of regulation and control by the state by virtue of the exercise of its police power in the interest of public convenience and the general good of the people."

*Farmers Automobile Inter-Insurance Exchange v. MacDonald*, 59 Wyo. 352, 140 P.2d 905, 911 (1943) (quoting 29 Am.Jur. 59, 60, § 22, and *Merchants' Mut. Automobile*

6

*Liability Ins. Co. v. Smart*, 267 U.S. 126, 129, 45 S.Ct. 320, 69 L.Ed. 538 (1925)). *See also Herrig v. Herrig*, 844 P.2d 487, 495 (Wyo. 1992) (the public policy for Wyo. Stat. Ann. § 26-15-124(c) regarding recovery of attorney fees against insurance companies is to encourage prompt settlement of righteous insurance claims).

[¶21] The legislative intent to protect the public in insurance matters is evident in subsequent laws. *See, e.g.*, W.S. § 26.1-53(b), Laws 1957 (disqualifying insurers from transacting business in Wyoming if the company officers or directors were "incompetent or untrustworthy" or if there was "good reason to believe" an officer or director was affiliated with "any person or persons whose business operations are or have been marked, to the detriment of policyholders or stockholders or investors or creditors or of the public, by manipulation of assets, or of accounts, or of reinsurance, or by bad faith"); W.S. § 26.1-266, Laws 1957 (regulating insurances rates to promote the public welfare).

[¶22] To withhold the protections of Chapter 15 from Wyoming businesses insuring risks in Wyoming simply because the address listed on the policy is in a different state is nonsensical. Such an interpretation would not protect Wyoming residents insuring risks located in Wyoming if an insurance contract was delivered outside of Wyoming, yet would offer protection to foreign residents for risks located outside of Wyoming if an insurance contract was delivered to a location in Wyoming. This interpretation would be inconsistent with Chapter 15 generally, as well as the other provisions given in § 26-15-101(a).

[¶23] Reading the Insurance Code as a whole and considering the history of the Insurance Code's former and current provisions, the Wyoming legislature's primary purpose regarding insurance law remains what it has always been: to "regulate [insurance companies'] affairs, so far, at least, as to prevent them from committing wrongs or injustice in the exercise of their corporate functions." *Farmers Automobile Inter-Insurance Exchange*, 140 P.2d at 911.

[¶24] Finally, in determining the meaning of the phrase "not issued for delivery in this state nor delivered in this state" contained in Wyo. Stat. Ann. § 26-15-101(a)(ii), a review of how other jurisdictions have interpreted similar statutes is helpful. Courts are split on whether statutory language referencing an insurance policy be "delivered" or "issued for delivery" should be construed strictly or liberally.

[¶25] The New York Supreme Court Appellate Division adopted a liberal interpretation of "issued for delivery" in *American Ref-Fuel Co. of Hempstead v. Employers Ins. Co. of Wausau*, 265 A.D.2d 49 (N.Y. App. Div., 2000). In *American Ref-Fuel Co.*, the underlying facts were:

> The plaintiff, American Ref-Fuel Company of Hempstead, operated the municipal incinerator for the Town of Hempstead. The defendant, Employers Insurance Company of Wausau

(hereinafter Wausau), with a home office in Wausau, Wisconsin, delivered two insurance policies to the plaintiff's parent corporation in Houston, Texas, for the policy period of January 1, 1995 until January 1, 1996. One policy was a commercial general liability policy, and the other policy a commercial umbrella liability policy. Each policy listed, as a named insured, American Ref-Fuel Company of Hempstead, located in Westbury, New York. The commercial general liability policy covered bodily injury or property damage in the policy period caused by an "occurrence." "Occurrence" was defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The umbrella policy covered "those sums that the insured becomes legally obligated to pay as damages in excess of the 'underlying limit'" of the primary policy. Each policy contained a "pollution exclusion."

The underlying action was brought by an employee of the Town of Brookhaven who was required to work in a portion of the Town of Brookhaven landfill that was used as a depository for, among other things, ash produced from the municipal incinerator operated by the plaintiff. The employee alleged that he sustained bodily injury from the plaintiff's allegedly negligent processing of the ash. He claimed that the plaintiff failed to add sufficient moisture to the ash, allowing it to become "airborne in or about the area" where he was required to work. He sued both the plaintiff and the Town of Hempstead.

*Id.* at 50-51. In 2000, New York Insurance Law § 3420(d) required insurance disclaimers be timely noticed. *Id.* at 51. For this subsection to be applicable to the insurance policy in question, Insurance Law § 3420(a) required insurance policies be "delivered or issued for delivery in [New York] for death or bodily injury arising out of an accident occurring within [New York]." *Id.* at 51-52. The defendant claimed Insurance Law § 3420 (d) did not apply because the insurance policies were not "delivered or issued for delivery" in New York. *Id.* at 53. The defendant argued the policies had instead been delivered in Texas because they were physically delivered to a parent corporation in Texas and "because . . . all premium invoices were sent to the parent corporation, and the policies were countersigned by the defendant's authorized agent in Texas." *Id.* The New York court disagreed:

In the instant case, on the other hand, the policies listed, as a named insured, the plaintiff, which is a New York corporation

8

located in and performing work in New York. The fact that the policies also covered other corporations operating in other States and the happenstance that the policies were countersigned and actually delivered in another State is not determinative. **Rather, the location of the insured and the risk to be insured are determinative** (*see, Amarnick v Automobile Ins. Co.,* 643 So 2d 1130 [Fla]; *East Coast Ins. Co. v Cooper,* 415 So 2d 1323 [Fla]; *Zurich Ins. Co. v Travelers Indem. Co.,* 184 AD2d 454, 461 [Sullivan, J. P., dissenting], *mod* 81 NY2d 938 *on dissenting mem of Sullivan, J. P.*).

*American Ref-Fuel*, 265 A.D.2d at 53 (emphasis added).

[¶26]  New York's rule, that an insurance policy is "delivered" or "issued for delivery" in New York if the policy "covers both insureds and risks located in" New York, was stated again in *Preserver Ins. Co. v. Ryba*, 893 N.E.2d 97, 100 (N.Y. 2008).  Even after New York modified its statutory language to apply to insurance policies "issued or delivered" in New York, it continued to apply the same rule, "conclud[ing] that the term 'issued or delivered'. . . encompasses situations where both insureds and risks are located" in New York.  *Carlson v. American Intern. Group, Inc.*, 89 N.E.3d. 490, 503 (N.Y. 2017).

[¶27]  Courts in at least three other states have concluded similar to New York that insurance contracts are "delivered" or "issued for delivery" in the state where both the insured and covered risk are located, so long as the insurer is aware of such.  *See Taylor v. Tennessee Farmer's Mut. Ins. Co.*, 659 So.2d 30, 31-32 (Ala. 1995) (holding that when an insurance company is aware its insured moved to Alabama and the insured vehicle was primarily garaged in Alabama, but the policy was mailed to a prior residence in Tennessee, the policy was "delivered or issued for delivery" in Alabama); *Blue Cross of Florida, Inc. v. Turner*, 363 So.2d 133, 135 (Fla. Dist.Ct. App. 1978) (holding that when a life insurance policy was not physically delivered to Florida, but a master policy was physically delivered to a Florida insurance office, the insured was a resident of Florida, employed in Florida, received a certificate in Florida, and paid premiums in Florida, the insurance policy was "issued for delivery or delivered in" Florida); *Rungee v. Allied Van Lines, Inc.* 449 P.2d 378, 381-82 (Idaho 1968) (finding the Idaho legislature intended to protect Idaho residents "by regulating the insurance issued in their behalf," and that Idaho Insurance Code § 41-1801(2), which "applies as to all insurance contracts . . . other than . . . policies or contracts not issued for delivery in this state nor delivered in this state" was applicable to an insurance policy delivered in Florida insuring household goods delivered to an insured changing residence to Idaho, when the goods were delivered in Idaho because the insurance policy was "issued for delivery or delivered in Idaho").

[¶28]   Some federal courts interpreting state laws have come to similar conclusions.[2]   Other federal courts give a stricter interpretation of state insurance code provisions including the language "delivered" or "issued for delivery," and find the language means the location an insurance contract is actually delivered.[3]   In *Lexington Insurance Company v. Precision Drilling Company, L.P.*, 951 F.3d 1185, 1197 (10th Cir. 2020), the Tenth Circuit affirmed the lower court's decision denying attorney fees pursuant to Wyo. Stat. Ann. § 26-15-124. The insurance policy involved was a Lloyd's of London umbrella insurance policy that covered insured risks for a drilling well site located in Wyoming. *Id.* at 1188.   However, the policy had been issued and delivered to the insured in Texas.   *Id.* at 1187.   In the *Lexington* decision, that court wrote:

> Addressing the merits of the issue, we agree with Lexington that Precision obtains no relief from § 26-15-124. Section 26-15-101 lays out the scope of Wyoming's insurance code. This statute allows prejudgment interest and attorneys' fees for "all insurance contracts and annuity contracts *except*: . . . (ii) Policies or contracts not issued for delivery in this state nor

---

[2] *See Fenasci v. Travelers Ins. Co.*, 642 F.2d 986, 992 (5th Cir. 1981) (per curiam) (finding an automobile insurance policy was "delivered or issued for delivery" in Louisiana when it was constructively delivered by being filed at the Louisiana Insurance Commissioner's Office, and "in the alternative, [finding] Louisiana has a stronger interest in applying its own law . . . than does any other state since it involves the deaths of Louisiana residents on Louisiana highways, and the claims of their Louisiana survivors under an insurance policy issued to cover, inter alia, vehicles principally garaged in Louisiana"); *Jorgenson Forge Corp.*, 2014 WL 12103362, *3 (finding when a Washington corporation listed as one of ten insureds on a policy issued in Illinois by an Illinois insurer, the policy was negotiated in Missouri, underwritten in New York, and physically delivered to the first named insured in Ohio, and the policy covered risks in Washington, the policy was "delivered or issued for delivery" in Washington); *Douglas v. Discovery Property & Cas. Ins. Co.*, 810 F.Supp.2d 724, 731 (M.D. Pa. 2011) (holding that when an insurance policy was said to have been delivered to the insured in Illinois, the Plaintiff had not proven the policy was delivered in Pennsylvania, and the policy insured corporate vehicles registered and operating in Pennsylvania, the policy was considered delivered or issued for delivery in Pennsylvania. "Were the court to find that this policy is not within the purview of section 1731, based on the defendants' interpretation of issuance and delivery, we would allow corporations to evade Pennsylvania law based merely on a self-serving "delivery" location.   We are convinced that this was not the Pennsylvania legislature's intent in drafting subsection 1731(a).").

[3] *See Travelers Indem. Co. of Ill. v. Royal Oak Enterprises, Inc.*, 359 F.Supp.2d 1321, 1323 (M.D. Fla. 2005) (finding that an insurance policy actually delivered to an insured corporation to its headquarters in Georgia, when the policy covered risks in Florida, was not "delivered" or "issued for delivery" in Florida); *J.B. Hunt Transport, Inc. v. S & D Transportation, Inc.*, No. 11-62096-Civ., 2013 WL 12086300, *3-4 (S.D. Fla. 2013) (deciding an insurance policy insuring risks in Florida but issued and delivered in Tennessee was "not issued for delivery in [Florida] nor delivered in [Florida]" thus making Florida law inapplicable); *McDermott Intern., Inc. v. Lloyds Underwriters of London*, 120 F.3d 583 (5th Cir.1997) (deciding an all-risks insurance policy issued to a Panamanian corporation headquartered in Louisiana, negotiated in London and issued in London, but then sent to an insurance agent in Canada with a photocopy later sent to the insured in Louisiana was delivered or issued for delivery in London).

> delivered in this state[.]" *Id.* . . . The Lexington policies were issued in Texas, so the Wyoming insurance code, including § 26-15-124, is inapplicable.

*Id.* at 1197. What is not clear from the *Lexington* decision is where Precision, the insured company, was located. It is also not clear if the Tenth Circuit would have decided differently if both the insured risk and the insured were located in Wyoming. Moreover, there was no controlling Wyoming caselaw on this issue when the Tenth Circuit decided *Lexington. See, e.g.*, *Kaufman v. Higgs*, 697 F.3d 1297, 1301 (10th Cir. 2012); *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665-66 (10th Cir. 2007).

[¶29] The decisions applying a stricter definition of "delivered" or "issued for delivery" are based on facts that are either unclear, or only met one of the two New York rule's requirements. These decisions are not necessarily inconsistent with the New York rule and are, in any event, distinguishable. The New York rule is consistent with the plain language of § 26-15-101 and the legislative intent of the Insurance Code. As such, we find New York's rule to be persuasive and adopt it.

## CONCLUSION

[¶30] For purposes of Wyo. Stat. Ann. § 26-15-101(a)(ii), an insurance contract is "delivered" in Wyoming if it is actually or constructively delivered in Wyoming. For purposes of § 26-15-101(a)(ii), an insurance contract is "issued for delivery" where the policy was intended to be delivered. This Court holds that, absent an insurance contract unambiguously stating otherwise, if the location of the insured and the location of the risk to be insured are both in Wyoming, an insurance policy is intended to be delivered and is "issued for delivery" in Wyoming. This decision is consistent with the purpose and public policy of Wyoming's Insurance Code, and the legislative intent behind Wyo. Stat. Ann. § 26-15-101(a): to protect public welfare and Wyoming residents from being taken advantage of by sophisticated insurance companies. Further, this reflects the legislature's concern that Chapter 15 of Wyoming's Insurance Code should be applicable to insurance contracts closely tied to protecting Wyoming residents in Wyoming courts.

[¶31] For the above-mentioned reasons, the certified question is answered in the affirmative. Pursuant to Wyo. Stat. Ann. § 26-15-101(a)(ii), an insurance policy is "issued for delivery" in Wyoming where a Wyoming corporation – in this case Sinclair – is a named insured and the policy covers risks in Wyoming.

11